UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTER FOR RESTORATIVE<br>BREAST SURGERY, L.L.C., ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-4346 |
| HUMANA HEALTH BENEFIT<br>PLAN OF LOUISIANA, INC., ET AL. | SECTION "L" (2) |

**ORDER & REASONS**

Before the Court is Defendants Humana Health Benefit Plan of Louisiana, Inc., Humana Inc., and Humana Health Plan, Inc.'s (collectively "Humana") motion to dismiss certain claims in Plaintiffs Center for Restorative Breast Surgery, LLC ("the Center") and St. Charles Surgical Hospital's amended complaint. (Rec. Doc. 49). Having considered the applicable law and the parties' memoranda, the Court now issues this order.

**I.    BACKGROUND**

This case arises out of alleged underpayment for medical services. The Center performs post-mastectomy breast reconstruction medical services and St. Charles provides hospital services in connection with those procedures. Both the Center and St. Charles provided these services to patients who were participants in Humana's Employee Retirement Income Security Act ("ERISA") plan. The ERISA plan permits patients to obtain services from out-of-network providers, such as the Center and St. Charles, and in turn Humana calculates and pays reimbursements to the providers of those services. In calculating the reimbursement, they consider the reasonable and customary rate.

The Center and St. Charles filed this action in the Civil District Court for the Parish of Orleans seeking benefits, on behalf of their patients, and seeking reimbursements, on their own

behalf, for services they had provided to patients covered by Humana. On November 17, 2010, Humana removed to this Court on the basis that the Center and St. Charles' claims were preempted by ERISA. (Rec. Doc. 1). On December 12, 2010, the Center and St. Charles sought remand (Rec. Doc. 9), which the Court denied on March 22, 2011 (Rec. Doc. 22). Humana then filed a motion to dismiss on April 15, 2011, and while it was pending, the Center and St. Charles filed a motion for leave to amend their complaint (Rec. Doc. 33). On July 20, 2011, the Court granted the Center and St. Charles' motion for leave to amend their complaint and denied Humana's motion to dismiss the original complaint. (Rec. Doc. 45).

In their amended complaint, the Center and St. Charles assert claims against Humana under ERISA and state law. (Rec. Doc. 46). With respect to their ERISA claims, the Center and St. Charles assert that Humana breached its fiduciary duty of loyalty and care, failed to provide full and fair review, and violated the claims procedures, for which they seek recovery as assignees of their patients. Under state law, these include claims of detrimental reliance, fraud, negligent misrepresentation, breach of contract, and unjust enrichment, for which the Center and St. Charles seek recovery on their own behalf. They also claim Humana violated the Louisiana Unfair Trade Practices Act ("LUTPA") and the Louisiana Insurance Code. In response to their amended complaint, Humana filed the present motion to dismiss the above-listed claims (Rec. Doc. 49). After that motion had been fully briefed by the parties (Rec. Docs. 49, 53, 56, 60), the Court stayed the proceedings on October 12, 2011, on the joint motion of the parties (Rec. Doc. 61). On September 9, 2013, the Court lifted the stay on the motion of the Center and St. Charles. (Rec. Doc. 63). At the request of the parties, the motion to dismiss the amended complaint was then continued.

## II.     PRESENT MOTION

As discussed above, Humana now moves to dismiss certain ERISA and state law claims in the Center and St. Charles' amended complaint. (Rec. Doc. 49). Specifically, it argues that the ERISA claims of breach of fiduciary loyalty and care, failure to provide fair and full review, and violation of the claims procedures provisions are duplicative or otherwise inappropriate. It also argues that the state law claims of detrimental reliance, fraud, negligent misrepresentation, breach of contract, and unjust enrichment, as well as violations of LUTPA and the Louisiana Insurance Code are preempted by ERISA or otherwise barred. The Center and St. Charles respond that they have appropriately brought the ERISA claims as their patients' assignees and the state law claims on their own behalf. (Rec. Doc. 53). They further argue that both the ERISA claims and the state law claims are sound. Humana replies that they do not seek unique areas of redress but merely seek to recover benefits under the plan. It argues that, under the jurisprudence, asserting each, individual ERISA claim is duplicative. It also argues that the Center and St. Charles' state law claims are preempted because they seek recovery under the plan or are barred because state law does not provide a private right of action. (Rec. Doc. 56). The Center and St. Charles reply further, arguing that Humana has misrepresented the applicable jurisprudence. (Rec. Doc. 60).

## III.    LAW & ANALYSIS

### A.      Standard

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause

of action will not do." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Here, the Court will address the Center and St. Charles' ERISA claims, which they bring as the assignees of its patients. It will then address their state law claims, which they primarily bring on their own behalf.

### B. ERISA Claims

#### 1. ERISA § 502(a)(1)(A) Claim

Under ERISA § 502(a)(1)(A), a participant or beneficiary of a plan may bring a civil action against an administrator "who fails or refuses to comply with a request for any information [it] is required . . . to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) . . . ." 29 U.S.C. § 1132(a)(1)(A), -(c)(1). Each beneficiary or participant may be entitled to receive $100 for each day the information is not provided or "other relief . . . deem[ed] proper." 29 U.S.C. § 1132(c)(1). Here, the Center and St. Charles, as assignees of the plan participants, allege that Humana failed or refused to comply with their requests for information. Specifically, they contend that Humana did not "provide proper disclosures to plan participants"[1] (Rec. Doc. 46 at 6, 9-10, 15-18). Having considered the Center and St. Charles' claim for relief under ERISA § 502(a)(1)(A), the Court finds it both sufficient and plausible.

#### 2. ERISA § 502(a)(1)(B) Claim

Under ERISA § 502(a)(1)(B), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

---

[1] The Center and St. Charles also allege that Humana did not provide them requested information or documentation about why and how their fees were reduced, which is significantly more pertinent to their state law claims.

4

the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, the Center and St. Charles, as assignees of their patients (that is, the plan participants), allege that Humana failed to properly determine benefits. They state that the participants "paid monthly premiums to Humana," and in exchange, Humana was "obligated to pay an out-of-network provider . . . for services provided to the [participants]." (Rec. Doc. 46 at 5). Specifically, they argue that Humana assented to paying out-of-network providers a certain percentage for covered services. For instance, the language of one plan provided that it would calculate the percentage based on "the fee [it] established . . . by comparing rates from one or more regional or national databases or schedules for the same or similar services from a geographical area [it] determined." (*Id.* at 6). "[M]any [participants] independently verified" this percentage and process with Humana, "knowing that they would personally owe [any] remaining balance" it did not pay. (*Id.* at 5). Nonetheless, the Center and St. Charles argue that "Humana made fee determinations on claims submitted . . . that were not for the same or similar services and reimbursed less than the stated percentage." (*Id.* at 6). Accordingly, the participants were required to pay the difference between the Humana-determined fee and the actual fee. (*Id.*). The Center and St. Charles allege that, as a result, "Humana systematically underpaid all claims for out-of-network services." (*Id.*). They further allege that "Humana routinely . . . 'down coded'" services that it had previously indicated were covered under the [participants'] plans. (*Id.* at 8). Having considered the Center and St. Charles' claim for relief under ERISA § 502(a)(1)(B), the Court finds that they have set forth a sufficient and plausible claim because they appropriately seek to recover benefits due to the participants under the terms of their plan and to enforce their rights under the terms of the plan.

### 3. ERISA § 502(a)(2) Claim

Under ERISA § 502(a)(2), a participant, beneficiary, or fiduciary may bring a civil action against "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" for "any losses to the plan resulting from each such breach, . . . to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and [for] other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. §§ 1109(a), 1132(a)(2). Such a civil action may only be brought for relief "for the plan itself," not for any individual participant or beneficiary. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985).

Here, the Center and St. Charles allege "Humana breached its fiduciary duties under ERISA" and "seek equitable and declaratory relief." (Rec. Doc. 46 at 3). Among other things, they allege that Humana "made allowable fee determinations without valid or appropriate data to support reduced payments," by "making misleading representations in their policy and violating similar federal law," by "'down-coding' the complex procedures performed and paying for a less complex procedure," "by failing to act solely in the interest of, or for the exclusive purpose of providing benefits to participants," and by "making . . . determinations without valid data." (*Id.* at 5-7, 14-15). Because the Center and St. Charles pled facts relating to the improper administration of the plan in a manner that affects the plan as a whole—rather than merely casting their claims in terms of seeking individual relief for benefits, they have appropriately alleged a § 502(a)(2) claim as assignees of the patients on behalf of the plan. To the extent that a remedy is unavailable as a § 502(a)(2) claim, it is possible that they may seek relief as the assignees of the patients on behalf of the patients themselves under their § 502(a)(3) claim.

6

### 4. ERISA § 502(a)(3) Claim

Under ERISA § 502(a)(3), a participant, beneficiary, or fiduciary may bring a civil action "to enjoin any act or practice which violates any provision" or for "other equitable relief" that "redress[es] such violations" or "enforce[s] any provision." 29 U.S.C. § 1132(a)(3). § 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). However, "in fashioning 'appropriate' equitable relief," it is necessary to "keep in mind the 'special nature and purpose of employee benefit plans'" as well as to "respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.'" *Id.* at 515. For this reason, "such relief normally would not be 'appropriate'" under § 502(a)(3) in instances where ERISA provides equitable relief elsewhere. *Id*. In most instances, a § 502(a)(3) claim will be retained even though it may eventually be determined to be duplicative.[2] *See Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999) (noting that summary judgment on a § 502(a)(3) claim is "appropriate only if [plaintiff] provide[s] no evidence of *any* ERISA violation"); *Vazquez v. AMO Enters., Inc.*, No. 12–0029, 2013 WL 593457, at *7 (W.D. Tex. Feb. 14, 2013) (noting that dismissal on a § 502(a)(3) claim is inappropriate if there is "a sufficient allegation 'of *any* ERISA violation'"). As another court has explained, by "allow[ing] plaintiffs to simultaneously plead claims under several subsections of [§ ] 502(a)," they are able to "develop their trial strategy and preserve alternative grounds for relief until a later stage in the litigation." *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 309 (S.D. Tex. 2011).

---

[2] In *Rhorer v. Raytheon Engineers and Constructors Inc.*, the United States Court of Appeals for the Fifth Circuit noted that, where a plaintiff is predominately seeking recovery of benefits under § 502(a)(1)(B), the plaintiff "may not simultaneously maintain [a] claim" under another provision. 181 F.3d 634, 639 (5th Cir. 1999). Because that opinion reviewed an decision on summary judgment, it is inapplicable here.

Here, the Center and St. Charles allege that Humana unlawfully misrepresented the benefits of the plan, excluded covered benefits, attempted to force providers to perform less costly services, failed to disclose the methodology and data used to determine reimbursement rates, and used flawed methodology and data to determine reimbursement rates. Thus, it is their assertion that, as assignees of their patients, they are entitled to other equitable relief beyond that available under other subsections of § 502(a). In either event, they state that they have only included this claim in the event relief is unavailable elsewhere. Although it appears possible that some or all of the relief they seek under § 502(a)(3) may be available under other subsections, it is not necessary to determine whether their § 502(a)(3) claim is duplicative at this point.

        5.     **ERISA § 503 Claim**

Under ERISA § 503, a plan is required to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial" and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. "To comply with the 'full and fair review' requirement in deciding benefit claims under ERISA, a claim administrator must provide the specific grounds for its benefit claim denial." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009). "Challenges to ERISA procedures are evaluated under the substantial compliance standard," which excuses technical noncompliance where the purposes of the provision have been otherwise fulfilled. *Id*. "Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Rossi v. Precision Drilling Oilfield Servs. Corp. Employee Benefits Plan*, 704 F.3d 362, 368 (5th Cir. 2013) (internal quotation marks omitted). "However, when the administrator fails to 'follow claims procedures consistent with the

[regulatory] requirements,' including providing adequate notice that it has denied the claim, 'a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.'" *Baptist Mem'l Hosp.—DeSoto Inc. v. Crain Auto. Inc.*, 392 F. App'x 288, 293 (5th Cir. 2010) (quoting 29 C.F.R. § 2560.503-1(*l*)).

Here, the Center and St. Charles contend that Humana engaged in conduct that deprived participants of a full and fair review of their claims for benefits, including discouraging them from pursuing procedural remedies and withholding information. It thus appears that they have appropriately alleged a claim, as assignees of their patients, that the administrator did not conduct a full and fair review.

    C.    **State Law Claims**

        1.    **Detrimental Reliance, Fraud, Negligent Misrepresentation, Breach of Contract, and Unjust Enrichment Claims**

Having considered each of the Center and St. Charles' claims under ERISA, it is necessary to consider their state law claims, as well. As a general matter, ERISA § 514 includes a preemption clause, which provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "ERISA's broad pre-emption provision [is] intended to pre-empt any state law that 'relate[s] to' an employee-benefit plan, not merely those state laws that directly conflict[ ] with a substantive provision in the federal statute." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 737 (1985) (alteration in original). "[I]t is to be construed extremely broadly." *Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 515 (5th Cir. 2002).

In determining whether a state law claim is preempted under § 514, it is necessary to determine "whether the benefit plan at issue constitutes an ERISA plan; if it is, we must then determine whether the state law claims 'relate to' the plan." *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006). Here, it is undisputed that the plan at issue constitutes an ERISA plan. Thus, it is necessary to consider whether the state law claims relate to the plan. This two-step inquiry considers "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan," as well as "(2) whether the claims directly affect the relationship among the traditional ERISA entities," such that between "the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.* With respect to the latter, it has been recognized that the relationship between "[t]he plan and a third party . . . provider" is not a "relationship between the traditional ERISA entities." *Jefferson Parish Hosp. Serv. Dist. No. 2, Parish of Jefferson, La. v. Principal Heath Care of La., Inc.*, 934 F. Supp. 206, 208 (E.D. La. 1996) (Fallon, J.). In addition to § 514's preemption provision, § 502 also provides an independent basis "for preemption where § 514(a) is inapplicable by operation of one of § 514's exemptions from preemption." *Woods*, 459 F.3d at 603. Such as, the exemption relating to state laws regulating insurance. *Id.* at 603 n.6. However, there are few—if any—instances "in which § 502(a) preemption was found to be proper where the state law claims did not [also] 'relate to' the ERISA plan under [the] § 514(a) analysis." *Id.* at 603.

A state law claim is not preempted if its resolution "does not depend on the terms" of an ERISA plan. *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011). Accordingly, a state law claim that "does not purport to regulate" whether and to what extent benefits are provided under an ERISA plan "but rather what representations [an insurer]

10

makes to third parties about the extent to which it will pay for their services" is not preempted. *Id.* Even "[i]f consultation of the [ERISA plan] is necessary, this, without more, does not require preemption." *Id.* at 386. Stated alternately, preemption "turns on whether [an agreement] creates a legal duty 'independent' of the ERISA plan." *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 531 (5th Cir. 2009). However, it does not necessarily matter whether the agreement between was oral or written. *Omega Hosp., L.L.C. v. Healthnow N.Y., Inc.*, No. 08-1373, 2008 WL 2038933, *2 (E.D. La. May 9, 2008) (McNamara, J.).

Certain factors are not germane to this inquiry. For instance, a provider's state law claims, under which it may recover on its own behalf, are not preempted simply because its patients have also assigned it their ERISA claims, under which the provider may recover on its patients' behalf.[3] *See Jefferson Parish Hosp.*, 934 F. Supp. at 208; *Intra-Operative Monitoring Servs., Inc. v. Humana Health Benefit Plan of La., Inc.*, 04-2621, 2005 WL 1155847, *2 (E.D. La. May 5, 2005) (Zainey, J.). Nor are a provider's claims preempted because it could recover an amount equal to the amount of benefits a patient could recover under the ERISA plan. *Jefferson Parish Hosp.*, 934 F. Supp. at 209. Nor are its claims preempted merely because such an agreement cross references the ERISA plan itself. *Lone Star*, 579 F.3d at 530. Within this framework, it is necessary to address each of the Center and St. Charles' state law claims.

Here, the Center and St. Charles have asserted a variety of state law claims. First, it is necessary to consider whether the Center and St. Charles' detrimental reliance, fraud, negligent misrepresentation, and breach of contract claims are preempted. Each of these claims arises solely out of the Center and St. Charles' alleged agreement with Humana regarding the amount it would pay them for services provided to Humana's insureds. The parties do not contest that a

---

[3] In fact, "a health care provider does not even have independent standing to seek redress under ERISA." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990). Accordingly, its only opportunity for independent redress, apart from that as an assignee of its patients, must be through a state law claim.

11

service was actually covered by the ERISA plan; rather, they dispute whether the Center and St. Charles relied on Humana's alleged representations that it would pay them for a service as well as the amount they would be paid for that service. Accordingly, none of these claims depend on the terms of the ERISA plan. Thus, they do not relate to the plan nor do they involve a relationship like that among traditional ERISA entities.

Second, it is necessary to determine whether the Center and St. Charles' unjust enrichment claim is preempted. Where a state law claim "depend[s] on its allegations that the ERISA plan would have obliged [the insurer] to reimburse that other provider," it is preempted. *Access Mediquip*, 662 F.3d at 386. Under Louisiana law, a claim for unjust enrichment is grounded "on [the] principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another." LA. CIV. CODE art. 2055. Among other things, such a claim requires that there "be an enrichment," "an impoverishment," and "a connection between the enrichment and resulting impoverishment." *Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422, 432 (La. 1967). Here, the Center and St. Charles' claim for unjust enrichment turns on the allegation that Humana had an obligation under the ERISA plan to pay for the services. Because the claim requires determining the right to coverage under the plan, it is necessarily preempted.

### 2. LUTPA and Louisiana Insurance Code Claims

In addition to the above-mentioned state law claims, which are attacked on preemption grounds, there are also several state law claims that are attacked on the basis that there is no right of action available under the applicable statutory provision. First, it is necessary to determine whether the Center and St. Charles' LUTPA claim is barred because it is not applicable to insurers. By its terms, the Louisiana Unfair Trade Practices Act ("LUTPA") does not apply to "actions or transactions subject to the jurisdiction of the . . . insurance commissioner . . . and

12

insurance regulators of other states." LA. REV. STAT. § 51:1406(1). In *Lamarque v. Massachusetts Indemnity and Life Insurance Co.*, the United States Court of Appeals for the Fifth Circuit concluded that, despite this language, an individual could bring an unfair trade practices claim against an insurer. 794 F.2d 197, 198 (5th Cir. 1986). However, this conclusion has since been rejected by many federal and state courts. *See, e.g.*, *LeMarie v. Lone Star Life Ins. Co.*, No. 00–0570, 2000 WL 739277 (E.D. La. June 7, 2000) (Duval, J.); *Travelers Indem. Co. v. Powell Ins. Co.*, No. 95–4188, 1996 WL 578030 (E.D. La. Oct. 4, 1996) (Vance, J.); *West v. Fireman's Fund Ins. Co.*, 683 F. Supp. 156 (M.D. La. 1988) (Polozola, J.); *Alarcon v. Aetna Cas. & Sur. Co.*, 538 So. 2d 696 (La. Ct. App. 3d 1989). Those courts have reasoned that the clear language of LUTPA bars "actions or transactions subject to the jurisdiction of the . . . insurance commissioner . . . and insurance regulators of other states," LA. REV. STAT. § 51:1406(1), and that it is the "duty of the commissioner of insurance to administer the provisions of [the Louisiana Insurance Code]," LA. REV. STAT. § 22:2. Further, the Louisiana Insurance Code provides its own remedies for unfair trade practices. Specifically, it prohibits "any trade practice which is . . . an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance." LA. REV. STAT. § 22:1963. Thus, an unfair trade practice involving insurance is within the jurisdiction of the commissioner of insurance and thus outside the scope of the LUTPA. *See Travelers Indem. Co.*, 1996 WL 578030, at *4. For this reason, the Center and St. Charles' claim under the LUTPA must be dismissed.

Second, it is necessary to determine whether Center and St. Charles' Louisiana Insurance Code claims which they bring as the assignees of their patients, are barred. The Louisiana Insurance Code specifies "[r]equired coverage for reconstructive surgery following mastectomies." LA. REV. STAT. § 22:1077 (formerly codified at § 22:250.17). The applicable

enforcement provision provides that "[t]he commissioner of insurance shall enforce [those requirements]." LA. REV. STAT. § 22:1071. "[A] group health plan and any health insurance issuer that fails to meet [its requirements] . . . shall be subject to a civil money penalty." *Id.* "In determining the amount of any penalty to be assessed . . . , the *commissioner of insurance* shall take into account the previous record of compliance of the entity being assessed with the applicable provisions . . . and the gravity of the violation." *Id.* (emphasis added). Those civil penalties are to be "paid to the Department of Insurance" and then "deposited immediately upon receipt into the state treasury." *Id.* The resources that do remain with "the Department of Insurance shall be used solely for the expenses in connection with . . . enforcement." *Id.* Without more, this language makes it abundantly clear that the enforcement provision provides a remedy for the commissioner of insurance but not for an individual. For this reason, the Center and St. Charles' claim arising under the Louisiana Insurance Code are dismissed.[4]

## IV. CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that Humana's motion to dismiss is **GRANTED IN PART**, with respect to the Center and St. Charles' unjust enrichment, LUTPA, and Louisiana Insurance Code claims, and **DENIED IN PART,** with respect to their ERISA, detrimental reliance, fraud, negligent misrepresentation, and breach of contract claims.

New Orleans, Louisiana, this 27th day of March, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court finds that an individual may not assert a claim under the statute, it is unnecessary to determine whether such a claim would be preempted.