**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CENTER FOR RESTORATIVE<br>BREAST SURGERY, L.L.C., ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-4346 |
| HUMANA HEALTH BENEFIT<br>PLAN OF LOUISIANA, INC., ET AL. | SECTION "L" (2) |

## ORDER & REASONS

Before the Court are Defendants Humana Health Benefit Plan of Louisiana, Inc., Humana

Inc., and Humana Health Plan, Inc.'s (collectively "Humana") (1) Motion for Partial Summary

Judgment on Plaintiffs' Procedural Violation Claim (Rec. Doc. 164); (2) Motion for Partial

Summary Judgment for Dismissal of ERISA Claims Time Barred by Contractual Limitations

Period (Rec. Doc. 167); (3) Motion for Partial Summary Judgment based on Improper Defendant

(Rec. Doc. 168); (4) Motion for Partial Summary Judgment as to Plaintiffs' ERISA 502(c)

Claims (Rec. Doc. 170); and (5) Motion for Partial Summary Judgment Based on Plaintiffs'

Failure to Exhaust Administrative Remedies (Rec. Doc. 171).   Having considered the applicable

law and the parties' memoranda, the Court now issues this Order & Reasons.

## I.       BACKGROUND

This case arises out of alleged underpayment for medical services. The Center for

Restorative Breast Surgery, LLC ("Center") performs post-mastectomy breast reconstruction

medical services, and St. Charles Surgical Hospital ("St. Charles") provides hospital services in

connection with those procedures.  Both the Center and St. Charles provided these services to

patients who were participants in Humana's Employee Retirement Income Security Act

("ERISA") plan.  The ERISA plan permits patients to obtain services from out-of-network

providers, such as the Center and St. Charles, and in turn Humana calculates and pays reimbursements to the providers of those services.  In calculating the reimbursement, they consider the reasonable and customary rate.

The Center and St. Charles filed this action in the Civil District Court for the Parish of Orleans seeking benefits on behalf of their patients and seeking reimbursements, on their own behalf, for services they had provided to patients covered by Humana (collectively "the Plaintiffs").  On November 17, 2010, Humana removed to this Court on the basis that the Center and St. Charles' claims were preempted by ERISA. (Rec. Doc. 1).  On December 12, 2010, the Center and St. Charles sought remand (Rec. Doc. 9), which the Court denied on March 22, 2011 (Rec. Doc. 22).  Humana then filed a Motion to Dismiss on April 15, 2011, and while it was pending, the Center and St. Charles filed a Motion for Leave to Amend their Complaint. (Rec. Doc. 33).  On July 20, 2011, the Court granted the Center and St. Charles' Motion for Leave to Amend their Complaint and denied Humana's Motion to Dismiss the original complaint. (Rec. Doc. 45).

In their amended complaint, the Center and St. Charles assert claims against Humana under ERISA and state law. (Rec. Doc. 46). With respect to their ERISA claims, the Center and St. Charles seek recovery as assignees of their patients, asserting that Humana breached its fiduciary duty of loyalty and care, failed to provide full and fair review, and violated the claims procedures.  The Center and St. Charles seek recovery on their own behalf and assert state law claims of detrimental reliance, fraud, negligent misrepresentation, breach of contract, and unjust enrichment, for which the Center and St. Charles seek recovery on their own behalf.  They also claim Humana violated the Louisiana Unfair Trade Practices Act ("LUTPA") and the Louisiana Insurance Code.  In response to the amended complaint, Humana filed a Motion to Dismiss the

2

above-listed claims (Rec. Doc. 49).  After that motion had been fully briefed by the parties (Rec.

Docs. 49, 53, 56, 60), the Court stayed the proceedings on October 12, 2011 on the joint motion

of the parties (Rec. Doc. 61). On September 9, 2013, the Court lifted the stay on the motion of

the Center and St. Charles. (Rec. Doc. 63).  At the request of the parties, the Court continued the

Motion to Dismiss the Amended Complaint.

On March 27, 2014, the Court granted Humana's Motion to Dismiss in part and denied it

in part. (Rec. Doc. 65).  Specifically, it concluded that the Center and St. Charles had sufficiently

alleged their ERISA, detrimental reliance, fraud, negligent misrepresentation, and breach of

contract claims, but not their unjust enrichment, LUTPA, and Louisiana Insurance Code claims.

The Court denied Humana's Motion for Reconsideration.  (Rec. Doc. 80).   On July 7, 2014,

Plaintiffs filed a Motion for Leave to File an Amended Exhibit 1 to the Amended Complaint in

order to add patients to their Complaint.  (Rec. Doc. 81).  The Court granted Plaintiffs' leave on

July 10, 2014.

To date, Plaintiffs bring this suit on behalf of themselves and as assignees of 109 patients.

Fifty-four (54) of those patients were members of employee group health plans governed by

ERISA.  The parties indicated to the Court that disposition of the ERISA claims would inform

the disposition of the non-ERISA claims, so the Court bifurcated the proceedings and ordered the

parties to proceed with the ERISA claims while staying the non-ERISA claims.  (Rec. Doc. 117).

While the Court initially ordered the parties to submit their briefs regarding the ERISA claims on

February 23, 2015, Humana relayed to the Court that it wished to file a number of dispositive

motions that would resolve many of the ERISA claims.  The Court thus converted the February

23, 2015 briefing deadline into the deadline for the parties to submit dispositive motions.  (Rec.

3

Doc. 158).  Humana subsequently filed six (6) motions for summary judgment related to the

ERISA claims.[1]

## II.      PRESENT MOTIONS

Plaintiffs recently filed a Motion for Leave to Conduct Supplemental Discovery and ask

the Court to withhold disposition of these motions for partial summary judgment until discovery

is complete.  (Rec. Doc. 241-1 at 10).  Plaintiffs, however, fail to articulate how additional

discovery will inform disposition of these motions, particularly since these cases are all governed

by ERISA, and this Court's review is limited to the administrative record.  Although some

additional information is required to effectuate this Order & Reasons, the incomplete record is

not due to any alleged failure by the Defendants to provide complete discovery responses.

Rather, the Court is unable to discern the precise nature of Plaintiffs' claims on behalf of *each*

patient, including the facts and dates relevant to those claims.  This information should be within

Plaintiffs' possession, as they are the masters of their own claims.  The Court will seek to rectify

this problem by requiring Plaintiffs to submit additional materials, as specified throughout this

Order & Reasons, and a detailed chart setting forth each patient's ERISA claims.  First, the Court

will dispose of those dispositive motions before the Court.

### A.   The Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

---

[1] Humana filed a Motion for Summary Judgment on Plaintiffs' Medicare Advantage Claims (Rec. Doc. 155), but the Court granted Plaintiffs' voluntarily dismissal of those claims with prejudice (Rec. Doc. 240). Accordingly, only five (5) motions are currently before the Court.

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B.   Motion for Partial Summary Judgment on Plaintiff's Procedural Violation Claim (Rec. Doc. 164)

#### 1.   Parties' Arguments

Humana asks this Court to grant summary judgment on Plaintiffs' claims for full and fair review, set forth in Count III of the Amended Complaint, and Plaintiffs' claims for procedural violations, set forth in Count V of the Amended Complaint (collectively referred to as the "Procedural Violation Claims"). (Rec. Doc. 164 at 2). Humana contends that Section 503[2]of ERISA outlines the requirements relating to benefit plan claims procedures but does not provide any remedial provisions, so a plaintiff seeking redress for alleged Section 503 violations must link that violation to the appropriate, private remedial provision contained in Section 502(a) of ERISA. (Rec. Doc. 164-2). In support of this proposition, Humana cites *Parkridge Med. Ctr. Inc. v. CPC Logistics, Inc. Group Benefits*, a case where the district court inferred that the plaintiff's procedural claims arose under Section 502(a)(3). No.12-124, 2013 WL 3976621, at

---

[2] Section 503 of ERISA is set forth in 29 U.S.C. § 1333 and Section 502 of ERISA is set forth in 29 U.S.C. § 1332. Courts, and the parties in this case, use these references interchangeably. As such, the Court will refer to both throughout this Order & Reasons.

*17 (E.D. Tenn. Aug. 2, 2013) (Collier, J.).  Here, Humana argues that Plaintiffs' Procedural

Violation Claims are properly asserted under Section 502(a)(3), and since Plaintiffs are also

seeking to recover under Section 502(1)(B), they are barred from simultaneously asserting these

Procedural Violation Claims. (Rec. Doc. 164-2 at 4-5).  Humana states that "it is well settled law

in this circuit that a potential beneficiary, even if ultimately unsuccessful, suing to recover

benefits under section 502(a)(1)(B), may not utilize the 'catchall' provision of section

502(a)(3)."  (Rec. Doc. 164-2 at 5) (quoting *Met Life Ins.Co. v. Palmer*, 238 F. Supp. 2d 831,

835 (E.D. Tex. 2002)) (internal quotations omitted).  Humana goes on to state that "[w]hile some

courts have relaxed rules of pleading such that they will permit a plaintiff to plead Section

502(a)(1)(B) and Section 502(a)(3) claims simultaneously, the law is clear that those claims may

not be simultaneously maintained on the merits, and that the extraneous Section 502(a)(3) claim

should be dismissed on summary judgment."  (Rec. Doc. 164-2 at 6).

Plaintiffs oppose the motion and distinguish the facts from *Parkridge*, averring that "[t]he

[*Parkridge*] court did not hold that there was any legal requirement that any and all procedural

claims and full and fair review claims must be brought under [Section 502(a)(3)] instead of

[502(a)(1)(B)]."  (Rec. Doc. 200 at 4).  Plaintiffs contend that they do not seek recovery under

Section 502(a)(3) for their Section 503 claims, as "the Fifth Circuit does not mandate that a

claim under 29 U.S.C. § 1133 seek relief under 29 U.S.C. § 1132(a)(3)."  (Rec. Doc. 200 at 5).

Fifth Circuit precedent, Plaintiffs maintain, rather permits Plaintiffs to seek relief under Section

503 and Section 502(a)(1)(B).  (Rec. Doc. 200 at 5-6).  Plaintiffs cite *Robinson v. Aetna Life Ins.

Co.*, 442 F.3d 389 (5th Cir. 2006) as support for this proposition.

Humana replies and avers that the *Parkridge* court determined that procedural violations

claims arise under Section 502(a)(3) because such claims are equitable.  (Rec. Doc. 213 at 2)

(quoting *Parkridge*, 2013 WL 3976621, at *17).  Humana further contends that other courts have reached this conclusion.  Humana avers that "[t]he overall point here is this: Plaintiffs' Procedural Violation Claim is not an independent cause of action through which they can obtain relief above and beyond [w]hat they are seeking in their Section 502(a)(1)(B) benefit claim." (Rec. Doc. 213 at 5).

Plaintiffs filed a sur-reply and argue that *Parkridge* should be limited to the facts of that case, because there, the *Parkridge* plaintiff did not expressly invoke a specific ERISA section in his Complaint.   Thus, Plaintiffs argue the district court was compelled to make its own finding that plaintiff's Section 503 claim arose under Section 502(a)(3).  Plaintiffs maintain that *Robinson* demonstrates how a Section 503 claim can form the basis for an award under Section 502(a)(1)(B).   (Rec. Doc. 233 at 1).  Plaintiffs argue that they "have asserted violations of ERISA Section 503 that go beyond merely seeking benefits that should have been paid, but were not."  (Rec. Doc. 233 at 3).  Plaintiffs point to the following claims as examples of allegations that cannot be fully remedied by the "mere award of benefits that should have been paid in the first instance":

> Defendants have made allowable fee determinations without valid or   appropriate data to support reduced payments, made fee determinations on claims submitted by the subscribers listed in Exhibit 1 that were not for the same or similar services, systematically and knowingly underpaid all claims for out-of-network services, made fee determinations that reduced the stated percentage of Plaintiffs' charges without valid data to support such determinations, and retaliated against their subscribers in some cases by unjustifiably down coding the complex procedures performed and paying for a less complex procedure. Plaintiffs have also alleged that Defendants engaged in fraudulent conduct and other conduct that also qualifies as a breach of fiduciary obligations.

(Rec. Doc. 233 at 5).  Plaintiffs go on to aver that "[u]nless and until the Court rules that these practices are in violation of ERISA and orders a halt to these practices, the Defendants will continue in their wayward conduct."  (Rec. Doc. 233 at 5).

### 2.      Law and Analysis

Count III of Plaintiffs' Complaint alleges that Humana failed to provide a full and fair review under ERISA, and Count V alleges that Humana failed to comply with the claims procedures defined by federal law, all in violation of 29 U.S.C. § 1133 or Section 503 of ERISA. (Rec. Doc. 46 at 15-18).  Plaintiffs contend that they bring their Section 503 claims under Section 502(a)(1)(B), but Section 502(a)(1)(B) provides no cause of action for Section 503 claims.  Rather, "Section 1132(a)(3) [502(a)(3)] allows a party to bring a civil action for relief when the requirements of § 1133 are not met."  *Stuhlreyer v. Armco, Inc.*, 12 F.3d 75, 78 n.2 (6th Cir. 1993).  *See also Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1135 (7th Cir. 1992) ("If a participant does not receive the notice and review that he or she is entitled under Section 503, the participant may bring a civil enforcement action under Section 502(a)(3) and (e) of ERISA."). Indeed, the remedy for a violation of Section 503 is equitable in nature and *not* monetary, as urged by the Plaintiffs.  *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review."); *Levi v. RSM McGladrey, Inc.*, No. 12-8787, 2014 WL 4809942, at *10 (S.D.N.Y. Sept. 24, 2014) ("To the extent that Plaintiff intends to allege a claim directly under section 1133, based on the alleged noncompliance, such a claim would not provide Plaintiff with access to any of the monetary redress he seeks.");  *Smith v. Champion Int'l Corp.* 220 F. Supp. 2d 124, 129 (D. Conn. 2002) ("[T]he usual remedy for a

violation of § 1333 would be equitable in nature, such as remanding plaintiffs' claims for benefits to the LTD Plans administrator or fiduciary for a 'full and fair review'").

Humana cites *Parkridge Med. Ctr. Inc. v. CPC Logistics, Inc. Group Benefits* as support for the proposition that all of Plaintiffs' Section 503 claims fall under Section 502(a)(3), but Plaintiffs argue that the case does not apply because the plaintiff in that case did not specify under which ERISA section she brought her Section 503 claims. Plaintiffs' argument rings hollow, as the *Parkridge* court deduced that the claims fell under Section 502(a)(3) because a plan participant can *only* bring Section 503 claims under Section 502(a)(3). *Parkridge Med. Ctr. Inc. v. CPC Logistics, Inc. Group Benefits*, No. 12-124, 2013 WL 3976621, at *25 (E.D. Tenn. Aug. 2, 2013) ("Although § 1133 is the substantive requirement, Plaintiff's action would be brought pursuant to 29 U.S.C. §1132(a)(3)…."). As noted above, other courts have applied this principle, and crucially, this Court was unable to find a single court that has held that a plan participant could bring a claim for Section 503 violations under Section 502(a)(1)(B). Indeed, Plaintiffs failed to cite a single case that stood for this proposition.

Humana seeks refuge in the Fifth Circuit's opinion in *Robinson v. Aetna Life Ins. Co.*, but this reliance is misplaced because the Fifth Circuit never spoke to the issue of whether a beneficiary could use Section 502(a)(1)(B) to pursue a Section 503 claim. In that case, the Fifth Circuit overruled the district court's granting of summary judgment in favor of the plan administrator and granted summary judgment in favor of the plan beneficiary. 443 F.3d at 396. The Fifth Circuit first found that the plan did not substantially comply with Section 503, the procedural violation, and then held that the plan administrator abused its discretion by terminating the beneficiary's benefits, the substantive violation. While Plaintiffs are correct in their claim that the Fifth Circuit did not mandate that the beneficiary pursue his procedural

9

violation claim under section 502(a)(3), this is because the Fifth Circuit did not speak to the procedural posture of the pleadings at all.  Rather, the Fifth Circuit remanded the case to the District Court to determine damages (*Id.* at 396), and the District Court ultimately awarded the beneficiary an amount that the District Court found to constitute "the past benefits owed to him under the plan." *Robinson v. Aetna Life Ins. Co.*, No. 04-371, Rec. Doc. 42 at 1 (Aug. 16, 2006 W.D. Tex.).  Such an outcome, rather than providing support for Plaintiffs' position, signals to the Court that the thrust of the Fifth Circuit's decision was focused on the wrongful denial of benefits under Section 502(a)(1)(B), the substantive violation, and not on a finding as to how to plead a Section 503 claim.

Now that the Court has determined that Plaintiffs' Section 503 claims are before the Court under Section 502(a)(3), it is next necessary to determine whether Plaintiffs can maintain these claims while simultaneously pursuing their claims under Section 502(a)(1)(B).  The Court concludes that they cannot.  The Supreme Court has stated that Section 502(a)(3) serves as a "safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy." *Vanity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The Supreme Court noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 513.  The Fifth Circuit followed this reasoning in *Tolson v. Avondale Industries, Inc.* 141 F.3d 604, 610-11 (5th Cir. 1998).  Adopting the District Court's analysis, the Fifth Circuit held that because the plaintiff "has adequate relief available for  the alleged improper denial of benefits through his right to sue the Plans directly under Section 1132(a)(1), relief through the application of Section 1132(a)(3) would be inappropriate." *Id.* at 610.  Indeed, the Fifth Circuit found that the *Tolson* plaintiff's attempt to

maintain his breach of fiduciary duty claim under Section 1132(a)(3) was "woefully unavailing."

*Id.  See also Rohorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir.

1999) ("[B]ecause § 1132(a)(1)(B) affords [Plaintiff] an avenue for legal redress, she may not

simultaneously maintain her claim for breach of fiduciary duty [under § 1132(a)(3)].")

This understanding of the remedial provisions of ERISA is widespread.  "[F]ederal courts

have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to

Section [502](a)(1), there is an adequate remedy under the plan which bars a further remedy

under Section[502](a)(3)."  *Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002); *see also*

*Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999); *Katz v. Comprehensive Plan of*

*Group Ins.*, 197 F.3d 1084, 1087-89 (11th Cir. 1999); *Forsyth v. Humana, Inc.*, 114 F.3d 1467,

1475 (9th Cir. 1997); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998);

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va.*, 102 F.3d 712, 715 (4th Cir. 1996).

The Sixth Circuit, sitting *en banc*, recently reaffirmed this position in *Rochow v. Life Ins.*

*Co. of North America* and rejected the appellant's position that he was entitled to a remedy under

both Section 502(a)(1) and 502(a)(3).  In its determination, the Sixth Circuit found that the

appellant's claimed injuries were indistinguishable, and he could therefore not seek an equitable

remedy under Section 502(a)(3) when he was awarded benefits under Section 502(a)(1).  780

F.3d 364, 375 (6th Cir. 2015).  The court noted:

> A claimant can pursue a breach-of-fiduciary-duty claim under §
> 502(a)(3), irrespective of the degree of success obtained on a claim
> for recovery of benefits under § 502(a)(1)(B), only where the
> breach of fiduciary duty claim is based on an *injury separate and*
> *distinct* from the denial of benefits or where the remedy afforded
> by Congress under § 502(a)(1)(B) is otherwise shown to be
> inadequate.

11

*Id.* at 372. (emphasis added).  The Sixth Circuit thus held that "[d]espite Rochow's attempts to obtain equitable relief by repackaging the wrongful denial of benefits claim as a breach-of-fiduciary duty claim, there is but one remedial injury and it is properly and adequately remedied under § 502(a)(1)(B)."  *Id.*

The same is true here.  Plaintiffs' claims to recover plan benefits constitute the predominate cause of action in this suit.  Moreover, Plaintiffs' Procedural Violations Claims are based on injuries that are indistinguishable from the denial of benefits.  In other words, Plaintiffs' claims that Humana failed to provide a full and fair review (Count III of Complaint, Rec. Doc. 46) and that Humana violated claims procedures (Count III of Complaint, Rec. Doc. 46) are essentially claims to pursue benefits owed under the plan.  While Plaintiffs aver in their sur-reply that the mere awarding of benefits will not provide recourse for these Procedural Violation injuries, Plaintiffs fail to articulate *how* these injuries are distinct from Plaintiffs' insufficient benefit payments.  For instance, Plaintiffs assert that "Plaintiffs will be left to deal with concerns as to how the Defendants' wrongful practices interfered with their physician-patient relationships and future impact of such interference on their medical practice and hospital," but this statement describes an amorphous injury and does not specify another, suitable remedy that would cure this amorphous injury.  (Rec. Doc. 233 at 4).  Rather, the Court finds that the payment of plan benefits will provide an adequate remedy, as the Procedural Violation Claims all resulted in alleged underpayment to Plaintiffs and is the injury upon which the claims rest.  Plaintiffs therefore cannot simultaneously sustain these separate claims under 502(a)(3).

Accordingly, **IT IS ORDERED** that Humana's Motion for Partial Summary Judgment on Plaintiffs' Procedural Violation Claims (Rec. Doc. 164) is **GRANTED**.

### C.   Humana's Motion for Partial Summary Judgment for Dismissal of ERISA Claims Time Barred by Contractual Limitations Period (Rec. Doc. 167)

#### 1.   Parties' Arguments

Humana asks this Court to grant summary judgment on eight (8) of the total claims asserted on behalf of the 54 ERISA patients, arguing that those claims are contractually time-barred.  (Rec. Doc. 167-9 at 3).  The eight (8) claims involve five (5) different ERISA patients. (Rec. Doc. 167-9 at 4).  Humana avers that all of the relevant ERISA plans included language that required beneficiaries to bring lawsuits within one (1) year and 180 days or 545 days after a final determination of a timely filed appeal.  (Rec. Doc. 167-9 at 4-12).  Humana therefore argues that because Plaintiffs amended their complaint on July 7, 2014 to add these claims, these eight (8) claims are contractually time barred because that date fell after the one (1) year and 180 day limit.  Humana argues that the "Supreme Court has held that the courts must give effect to an ERISA plan's limitations provision unless it determines either that the period is unreasonably short or that a controlling statute prevents the limitations provision from taking effect."  (Rec. Doc. 167-9 at 14) (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S.Ct. 605, 612 (2013)).  Here, Humana contends the one (1) year and 180 day limitations provision is reasonable because the Fifth Circuit has held that a 120 day provision was reasonable, and the Supreme Court found a one-year provision reasonable.  (Rec. Doc. 167-9 at 15).

Plaintiffs oppose the motion.  Plaintiffs concede that the applicable contractual period is one (1) year and 180 days, but Plaintiffs argue that since the Court stayed the case from October 11, 2011 until September 5, 2013, this period should be excluded from the time needed to file suit.  (Rec. Doc. 201 at 4).  Plaintiffs argue that the Court should consider this time as "equitable tolling," as outlined by the Supreme Court in *Heimeshoff*.  (Rec. Doc. 201 at 3-4).  With this period excluded, Plaintiffs argue that they timely filed their claims.  (Rec. Doc. 201 at 4).

13

Plaintiffs further argue that the exhibits offered by Humana fail to establish that the contracts were in effect when Plaintiffs received treatment from the Center and St. Charles. Finally, Plaintiffs maintain that if the Court finds that summary judgment is appropriate on those claims, the Court should only grant summary judgment for their Section 502(1)(a)(B) claims and not for the allegations of improper practices. (Rec. Doc. 201 at 7)

Humana replies with leave of Court and notes that "Plaintiffs do not contest the fact that all 8 claims are time barred by the clear terms of the policies." (Rec. Doc. 210 at 1). Humana contends that equitable tolling under *Heimeshoff* is inapplicable to this case, as the *Heimeshoff* Court explained that equitable tolling would only be appropriate when the administrator's conduct causes the beneficiary to miss the filing deadline. (Rec. Doc. 210 at 3). Further, Humana argues that the stay did not prevent the patients from pursuing their claims themselves, as the stay *only* applied to the Center and St. Charles. (Rec. Doc. 210 at 4). Humana states that it is "notable" that "Plaintiffs still waited nearly a year after the stay was lifted to add these 8 claims to their suit," indicating that Plaintiffs were not contemplating adding these claims within one (1) year and 180 day timeframe. (Rec. Doc. 210 at 5). In response to Plaintiffs' allegations that the exhibits did not show that the policies were in effect during the treatment periods, Humana attached copies of the policies. (Rec. Doc. 210 at 5).

Plaintiffs filed a sur-reply and assert that they voluntary agreed to stay the litigation in October 2011 to pursue a global resolution arising out of Humana's conduct, including those claims already filed and those claims that had not yet been filed. (Rec. Doc. 231 at 1-2). Accordingly, Plaintiffs contend that the stay applied to those claims that they had not yet been formally added to this litigation. (Rec. Doc. 231 at 2). Plaintiffs also dispute Humana's allegation that Plaintiffs conceded that they asserted the claims after the contractual time period,

14

as the stay served to toll or suspend the contractual time period.  (Rec. Doc. 231 at 2).  Plaintiffs contend that "contrary to Defendants' assertion, the *Heimeshoff* Court never limited the application of the equitable estoppel doctrine in ERISA cases to situations only involving the plan administrator's dilatory conduct during the internal review process."  (Rec. Doc. 231 at 3).  Rather, the stay "constitutes the type of extraordinary circumstances and conduct that warrant application of equitable estoppel to defeat their contractual limitations defense."  (Rec. Doc. 231 at 4).

### 2.      Law and Analysis

The parties concede that the contractual statute of limitations requires the beneficiaries to file their suit within one (1) year and 180 (days) or 545 days from the date Humana made a final determination of a timely filed appeal; however, the issue here is whether this Court's stay served to toll that period.  "Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the action accrues, as long as the period is reasonable."  *Heimeshoff*, 134 S.Ct. at 610.  The parties do not dispute that the 545 day contractual time-limitation was reasonable.  In *Heimeshoff*, the Supreme Court stated that "[t]o the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, equitable tolling may apply."  *Id.* at 615.   The Court does not find that this language limits equitable tolling to those instances where the plan administrator's specious conduct during the internal review process caused delay.  Rather, the Court can exercise its equitable powers whenever such exceptional circumstances arise, though the Court recognizes that it should "sparingly" extend such relief.  *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95 (1990).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1)

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

On October 12, 2011, the parties asked the Court to stay the proceedings so they could seek a global resolution of the case and avoid expending significant resources on the discovery that is required in a case like this. (Rec. Doc. 58 & 59). Both parties sought the stay, and it was intended to benefit both parties, allowing them to pursue a settlement without the expensive and demanding costs of litigation. Almost two years later, on September 6, 2013, the Court lifted the stay in response to Plaintiffs' motion. These facts demonstrate that the Plaintiffs, on behalf of the five patients, diligently pursued the rights of the five patients, as Plaintiffs filed suit and then engaged in settlement negotiations that would have encompassed those five patients' claims.

The Court also finds that these facts present the "extraordinary circumstance" necessary to apply equitable tolling. The Plaintiffs suspended all litigation while they pursued a settlement with Humana, and as this suspension was intended to benefit both parties, it would be unjust if the five patients' statute of limitations tolled while they were unable to file an amended complaint and join the suit. While Humana is correct that these five patients could have brought their own suits and were not individually subjected to the stay, the stay sought a global resolution that would have applied to their claims, so it would have been senseless for those five patients to have filed suit during that time. Moreover, such filings would have undermined the purpose of the stay, which was not intended to spawn separate but related suits, but rather was intended to foster an environment where the parties could reach a settlement. The Court thus finds that it would be inequitable to dismiss these eight (8) claims and will deny summary judgment.

**IT IS ORDERED** that Humana's Motion for Partial Summary Judgment for Dismissal of ERISA Claims Time Barred by Contractual Limitations Period (Rec. Doc. 167) is **DENIED**.

**D.   Humana's Motion for Partial Summary Judgment Based on Improper Defendant (Rec. Doc. 168)**

**1.     Parties' Arguments**

Humana seeks summary judgment on four patients' claims, arguing that the final discretionary authority associated with those patients' plans is vested in the Plan Administrator and/or Plan Sponsor, so Plaintiffs cannot bring suit against Humana because Humana merely serves as the third party administrator.  (Rec. Doc. 168-2 at 1).  Humana contends that under Fifth Circuit precedent in *Lifecare Management Services LLC v. Insurance Management Services LLC*, "a party may only be held liable for payments of claims if it exercises 'actual control' over the benefits or claims process.'"  (Rec. Doc. 168-12 at 4) (quoting 703 F.3d 835, 845 (5th Cir. 2013).  These four patients, Humana argues, had plans which provided for the employer to have final discretionary authority, so Humana is not the proper defendant.  (Rec. Doc. 168-12 at 6-11).

Plaintiffs oppose the motion and argue that Humana misconstrues the Fifth Circuit's holding in *Lifecare*.  Plaintiffs maintain that the Fifth Circuit ultimately found the third party administrator liable in *Lifecare*, holding that a third party administrator could be held liable when the third party administrator exercised more control than what the documents provided.  (Rec. Doc. 203 at 3).  Plaintiffs contend the same is true for these four patients and that there remains a question of fact as to the level of control Humana exerted over these four plans.  (Rec. Doc. 203 at 3).  Plaintiffs thus conclude that these claims are not ripe for summary judgment because "as in the *Lifecare* case, the facts establish that the level of Defendant's involvement in the claims process is significant and controlling."  (Rec. Doc. 203 at 10).

17

Humana replies with leave of Court and contests Plaintiffs characterization of *Lifecare*, arguing that whether a party exercises actual control of plan administration is not a factual inquiry and that the Court's analysis is limited to the plan documents.  (Rec. Doc. 215 at 1-2). Plaintiffs filed a sur-reply and reassert their disagreement with Humana's interpretation of *Lifecare*.  Plaintiffs contend that "[t]he Fifth Circuit ruled that the third-party administrator could be held liable for nonpayment of the claim, despite contract language that stated the third-party administrator did not have final authority."  (Rec. Doc. 220 at 3).

### 2.      Law and Analysis

Humana argues that summary judgment is appropriate for these four patients' claims because Humana is not the proper defendant, as Humana merely served as the third party administrator, and the plan documents did not vest Humana with actual control over the claims processes.  A third party administrator "may be held liable only if it exercises 'actual control' over the benefits claims process."  *Lifecare Management Services LLC*, 703 F.3d at 844.  "The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan and that if an entity or person other than the named administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits."  *Id.* at 845 (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)) (internal quotations omitted).  "Where a [third party administrator] exercises control over a plan's benefits claims process, and exerts that control to deny a claim by incorrectly interpreting a plan in a way that amounts to an abuse of discretion, liability may attach."  *Id.*

In *Lifecare*, the Fifth Circuit relied on this framework to analyze whether a third party administrator exercised actual control over the claims process.  The Fifth Circuit proceeded with this analysis by looking to the plan documents, but the Fifth Circuit also highlighted facts outside

of the record.  Specifically, the Fifth Circuit emphasized the fact that the third party administrator had admitted it did not refer routine claims to the plan administrator.  *Id.*  The Fifth Circuit also stressed that the third party administrator was tasked with determining whether claims were considered "routine" and with interpreting the plan's terms to administer claims.  *Id.*  Based on these facts, the Fifth Circuit held that the third party administrator was a proper defendant and distinguished the facts from "those cases in which administrators were found not liable for performing only non-discretionary functions."  *Id.*  In its holding, the Fifth Circuit noted that the case would have been different if the plans had not afforded the third party administrator the power to deny claims it deemed routine; if the third party administrator would have had to refer all disputed claims to the plan administrator; or if the administrative record had included evidence that the third party administrator had to apply the plan administrator's interpretation of plan terms.  *Id.* at 846.  With this context, the Court now turns to the language of each patient's plan.

### a.     R.P. Bryan

Patient R.P. Bryan was a member of a self-funded plan, hereto referred to as "the Plan," sponsored by her employer, North Oaks Health System, and Humana served as the Plan's third party administrator.  Under the Plan, North Oaks Health System is defined as the "Plan Administrator."  (Rec. Doc. 168-8 at 5).  The Plan "uses a two- level appeals process for all adverse determinations."  (Rec. Doc. 168-6 at 36).  Under the Plan,

> Humana will make the determination on the first level of appeal. If the *claimant* is dissatisfied with the decision on the first level of appeal, or if Humana fails to make a decision within the time frame indicated below, the *claimant* may appeal to the *Plan Administrator*.  **A first and second level appeal must be made by a *claimant* by means of written application, in person or by mail (postage prepaid) addressed to:**

**Humana Grievance and Appeals**
P.O. Box 14546
Lexington, KY 40512-4546

(Rec. Doc. 168-6 at 36).  Under the Section entitled "Exhaustion," the Plan states:

> Upon completion of the appeals process under this section, a claimant will have exhausted his or her administrative remedies under this Plan.  **If Humana fails to complete a claim determination or appeal within the time limits set forth above**, the claimant may treat the claim or appeal as having been denied, and the claimant may proceed to the next level in the review process.

(Rec. Doc. 168-6 at 38).  The "Plan Management Agreement for Administrative Services between Humana Insurance Company and North Oaks Health System" ("Plan Management Agreement") identifies Humana as the "Plan Manager" and North Oaks Health System as the "Client" and "Plan Administrator."  (Rec. Doc. 169-9 at 1-2).  The Plan Management Agreement provides:

> 2.2 The Plan Manager does not have discretionary authority or responsibility in the administration of the Plan.  The Plan Manager will not exercise discretionary authority or control respecting the disposition or management of assets of the plan.

> 2.3 The Plan Administrator and not the Plan Manager is ultimately responsible for interpreting the provisions of the Plan and determining questions of eligibility for Plan Participation.

> 5.1 The Client hereby delegates to the Plan Manager Authority to make determinations on behalf of the Client or the Plan Administrator with respect to benefit payments under the Plan and pay such benefits, as specified in this Article V.

> 5.6 However, if the Plan Administrator makes a determination to approve or deny a claim which is different than the determination made by the Plan Manager, the Plan Manager will timely issue an approval or denial of the claim, provided the Plan Administrator's decision is first communicated to the Plan Manager in writing.

> 5.8 Appeals of denied claims shall be processed in accordance with the applicable provisions of the Plan.  The Client acknowledges

20

> that the Plan Administrator shall have the ultimate responsibility
> and authority to make final determinations with respect to claims
> and is responsible for providing Participants with a written
> explanation of that decision.

(Rec. Doc. 168-9 at 5).

Based on the Plan's language, the Court finds a disputed material fact as to whether Humana exercised "actual control" over the claims administration. While the Plan initially states that Humana will resolve the initial appeal and the Plan Administrator will determine the second appeal, the Plan then instructs the claimant to send *both* appeals to Humana. It is unclear what part, if any, Humana plays in the determination of the second appeal or whether Humana merely serves as the receiving point for all appeals and forwards the second appeals to the Plan Administrator. Further, when the Plan describes appeals exhaustion, the plan only references determinations rendered by Humana; the Plan does not mention any action undertaken by the Plan Administrator.

The Court finds that these disputed facts are material. If Humana handles both levels of appeals or selectively decides which appeals go to the Plan Administrator, this exercise of discretion would signify actual control, and Humana would be a proper defendant under *Lifecare*. On the other hand, if Humana merely forwards all appeals to the Plan Administrator, Humana would exercise no discretion, and the Plan Administrator would signify the ultimate authority over claims determinations. These facts would render Humana an improper defendant under *Lifecare*. Accordingly, the Plan's conflicting language creates a disputed material fact and prevents the granting of summary judgment at this time.

**b.**      **L. O'Brien**

Plaintiffs assert two claims on behalf of patient L. O'Brien, and Humana avers that the

Court should grant summary judgment on those claims because Ms. O'Brien's plan designated

Sensient Group, and not Humana, as the final authority on claims administration.  Humana

served as the third party administrator.  Ms. O'Brien's plan contains a two-tiered appeals

process:

> The first appeal will be determined by Humana.  If the claimant is
> dissatisfied with the decision on the first level of appeal, or if
> Humana fails to make a decision within the time frame indicated
> below, the claimant may appeal to the Sensient Technologies
> Administrative Committee.
>
> - A first level appeal must be made by a claimant by means
>   of written application, in person, or by mail addressed to:
>
>      Humana –G&A
>      P.O. Box 14618
>      Lexington, KY 40512-4618
>
> - A second level appeal must be made by a claimant by
>   means of written application, in person, or by mail
>   addressed to:
>
>      Sensient Benefits Administrative Committee
>      777 East Wisconsin Avenue, 11th Floor
>      Milwaukee, WI 53202-5304

(Rec. Doc. 168-12 at 37-38).  The Plan goes on to state that "[i]if Humana or the [Sensient]

Benefits Administrative Committee fails to complete a claim determination or appeal within the

time limits set forth above, the claimant may treat the appeal as having been denied, and the

claimant may proceed to the next level of the review process."  (Rec. Doc. 168-12 at 42).  The

"Plan Management Agreement for Administrative Services between Humana Insurance

Company and Humana Dental Insurance Company and Sensient Technologies Corporation"

contains identical language as the "Plan Management Agreement for Administrative Services

22

between Humana Insurance Company and North Oaks Health System," as described under the R.P. Bryan Plan above.  (Rec. Doc. 168-13 at 2-6).

This Plan's language contains a crucial distinction from that of R.P. Bryan, as the claimant maintains the discretion to send her appeal to the Plan Administrator *and* the provided address belongs to the Plan Administrator, not Humana.  The exhaustion procedures also explicitly reference Sensient.  The Court thus does not find the same disputed material facts, as there is no question of whether Humana chooses which appeals to forward to the Plan Administrator.  These facts are also distinguishable from the situation in *Lifecare*, where the Fifth Circuit stressed that it was at the third party administrator's discretion to determine which claims would be submitted for another appeal.  Here, the discretion to appeal lies with the claimant, and the Plan instructs the claimant to send the second appeal directly to the Plan administrator, so the ultimate decision is vested in the Plan Administrator.  This situation is rather akin to those scenarios the Fifth Circuit described when a third party administrator would not be liable, such as when a third party administrator refers all disputed claims to the third party administrator.  *See Lifecare Management Services LLC*, 703 F.3d at 845-56 ("Had IMA referred all disputed claims to BRI and Carter for resolution it would not now be liable for having exercised discretionary authority…..").  Since Humana cannot exercise its discretion to determine which appeals go to the Plan Administrator for a second appeal, Humana does not exercise actual control over the claims process.  Further, the agreement between Humana and Sensient Group reinforces this conclusion, as the language vests the ultimate discretion in Sensient.

Plaintiffs maintain that the Court can look beyond the Plan to determine whether Humana exercised more control than what is outlined in the Plan documents, but Plaintiffs provide *no* facts to show that Humana exercised any control beyond that assigned in the Plan.  Courts grant

23

summary judgment only when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  If the moving party carries this burden, "[t]he burden then shifts to the nonmovant" to show that there is a genuine issue of material fact.  *Phillips Petroleum Co. v. Loucks*, 42 F. 3d 641 1994 WL 708633, at *2 (5th Cir. 1994) (quoting *Meyers v. M/V Eugenio C*, 919 F.2d 1070, 1072 (5th Cir.1990)).  If and when the burden shifts to the nonmovant, "Rule 56(c) mandates . . . summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  "[T]here is no issue for trial unless there is *sufficient evidence* favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (emphasis added).  Thus, while the Court agrees that the *Lifecare* Court looked beyond the record in its analysis, Plaintiffs fail to supply *any* facts or records for the Court to incorporate into its analysis.  Plaintiffs' conclusory allegations, without more, are not sufficient to overcome summary judgment.  The Court thus finds it is appropriate to grant summary judgment on the claims asserted by L. O'Brien.

### c.        K. Stafford and J. Sheehan

Plaintiffs assert two claims on behalf of patient K. Stafford and one claim on behalf of J. Sheehan, and Humana avers that the Court should grant summary judgment on these claims because those patients' employers maintained actual control over claims administration while

24

Humana only served as the third party administrator.  Because the patients' plan documents contain identical language and Humana did not supply any agreement between the employers and Humana, the Court will dispose of these arguments at the same time.  Both of the relevant Plans "use[] a two- level appeals process for all adverse determinations."  (Rec. Doc. 168-16 at 8).  According to the language used in both Plans,

> Humana will make the determination on the first level of appeal. If the *claimant* is dissatisfied with the decision on the first level of appeal, or if Humana fails to make a decision within the time frame indicated below, the *claimant* may appeal to the *Plan Administrator*.  A first and second appeal must be made by a *claimant* by means of written application, in person or by mail (postage prepaid) addressed to:

> Humana Grievance and Appeals
> P.O. Box 14546
> Lexington, KY 40512-4546

(Rec. Doc. 168-16 at 8; Rec. Doc. 168-20 at 17.).  Under the Section entitled "Exhaustion," the Plans state:

> Upon completion of the appeals process under this section, a claimant will have exhausted his or her administrative remedies under this Plan.  If Humana fails to complete a claim determination or appeal within the time limits set forth above, the claimant may treat the claim or appeal as having been denied, and the claimant may proceed to the next level in the review process.

(Rec. Doc. 168-16 at 10; Rec. Doc. 168-20 at 20).

This language mirrors the language contained in the Plan documents of R.P. Bryan, and the Court has already concluded that this language creates a disputed material fact as to the level of actual control Humana exercised over the claims administration.  Accordingly, the Court finds summary judgment is not appropriate for the claims of K. Stafford or for the claims of J. Sheehan.

**IT IS ORDERED** that Humana's Motion for Partial Summary Judgment Based on Improper Defendant is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to the claims of L. O'Brien.  It is **DENIED** as to the claims of R.P. Bryan, K. Stafford, and J. Sheehan.

### E. Humana's Motion for Partial Summary Judgment as to Plaintiffs' ERISA 502(c) Claims (Rec. Doc. 170)

#### 1. Parties' Arguments

Humana seeks summary judgment on Plaintiffs' 29 U.S.C. § 1132(c), or Section 502(c), claims.  In support of its motion, Humana contends that Section 1132(c) is narrow and only permits recovery when a plan participant submits a clear request for plan documents and the administrator fails to comply.  (Rec. Doc. 170-2 at 4) (citing *Wilczynski v. Lumbermens Mutual Casualty Co.*, 93 F.3d 397 (7th Cir. 1996)).  Humana argues that Plaintiffs' Amended Complaint describes requests for documents that fall outside this narrow scope of plan documents, and fails to identify a specific instance of an alleged written request.  (Rec. Doc. 170-2 at 5).  Humana also avers that Section 502(c) only applies to the plan administrator, thus barring Plaintiffs from filing claims on behalf of the four patients whose plan documents identify Humana as the third party administrator.  (Rec. Doc. 170-5 at 7-8).  Finally, Humana claims that the Louisiana statute of limitations of one-year for delictual actions apply to the instant case, as the allegations arise from a breach of statutory duty and not from a contractual breach.  (Rec. Doc. 170-2 at 9).  Since Plaintiffs' claims date back to 2006 and they have amended their complaint twice, Humana argues that the onus is on Plaintiffs to demonstrate their compliance with the statute of limitations.  (Rec. Doc. 170-2 at 10).

Plaintiffs oppose the motion.  In response to Humana's contention that Plaintiffs failed to identify written requests for plan documents, Plaintiffs attach 121 pages of Appeal Letters that

they had previously turned over to Humana during discovery.  (Rec. Doc. 202 at 2-3).  These

letters, Plaintiffs contend, satisfy the requirements of 29 U.S.C. 1132(c) and render summary

judgment inappropriate.  (Rec. Doc. 202 at 3).  Plaintiffs dispute Humana's averment that it

cannot be held liable since it did not serve as administrator for those four patients, arguing that

the Fifth Circuit instructed in *Lifecare* that a third party administrator can be held liable when it

exercises actual control.  (Rec. Doc. 202 at 4-5) (citing 703 F.3d 835 (5th Cir. 2013)).  The plan

documents, Plaintiffs contend, demonstrate that Humana has presented itself as the authority that

controls claim administration and is therefore liable under Section 502(c).  Plaintiffs dispute

Humana's assertion that these claims are subject to a one-year prescription period, arguing that

the claims are governed by Louisiana Civil Code Article 3499, which provides for a ten-year

prescriptive period.  (Rec. Doc. 202 at 9) (citing *Ferrell v. The Estate of Donovan*, 772 So. 2d

260, 262 (La App. 5 Cir. 2000)).

Humana replies with leave of Court.  Humana argues that *Lifecare* does not apply to

Section 502(c) claims, as Section 502(c) specifies that a plan administrator is the proper

defendant.  (Rec. Doc. 226 at 2).  Since those four patients' plans designate Humana as the Plan

Manager, and not the Plan Administrator, Humana claims it is not a proper defendant for Section

502(c) claims.  Looking to the Appeal Letters, Humana argues that the Appeal Letters "show that

no clear request for documents was ever made" because the request was conditioned on an

adverse appeal decision.  (Rec. Doc. 226 at 5). Finally, Humana reasserts its position that these

claims signify delictual claims and are therefore subject to the one-year prescriptive period.

(Rec. Doc. 266 at 7) (citing *Doucet v. Turner Industries, LLC*, No. 13-115, 2013 WL 3059761,

*2 (W.D. la. June 14, 2013)).

Plaintiffs filed a sur-reply.  Plaintiffs dispute Humana's characterization of *Fisher* and note that the plans delegate a wide range of responsibility to Humana.  (Rec. Doc. 229 at 2). Plaintiffs argue that the Appeal Letters provided clear notice to Humana of their document requests and cite the Sixth Circuit case *Cultrona v. Nationwide Life Insurance Co.*as support for this proposition.  (Rec. Doc. 229 at 3) (citing 748 F.3d 698 (6th Cir. 2014)).  Plaintiffs re-aver their position that these claims are subject to the ten-year prescription period.  (Rec. Doc. 229 at 4).

### 2.      Law and Analysis

Humana asserts three arguments as support for its Motion for Summary Judgment on Plaintiffs ERISA Section 502(c) claims: (1) Plaintiffs fail to demonstrate that they provided clear written notice of their request for plan documents; (2) the claims fall under a one-year statute of limitations period and are therefore prescribed; and (3) Humana is not the Plan Administrator under four patients' plans and is therefore not a proper defendant for those patients' 502(c) claims.  The Court will address each argument in turn.

### a.      Clear Notice of Request for Plan Documents

Pursuant to 29 U.S.C. § 1024(b)(4), an ERISA plan administrator, "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description…or other instruments under which the plan is established or operated."  Section 1022(a) instructs that "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title."  Any administrator who fails or refuses to comply with such a request may, within the court's discretion, be held personally liable to the requesting party up to $100 for each day after the date of refusal.  29 U.S.C. 1132(c); *see Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th

Cir. 1990).  The Fifth Circuit has instructed that "as a penalty provision section 1132(c) must be strictly construed."  *Fisher*, 895 F.2d at 1077.

Plaintiffs seek damages under section 1132(c) for the alleged failure of Humana to comply with requests for documents.  Count IV of Plaintiffs' Amended Complaint outlines these allegations.  Specifically, Plaintiffs aver that they "requested copies of the actual Plan documents relative to the subscriber, the appeals policies and procedures used by Humana, the documents relied upon in establishing the appropriateness of the denial of benefits, and the applicable price for a participating provider who bills for the services rendered.  However, such requests have been ignored by Humana, who refuses to produce the plan documents and other documents requested by Plaintiffs."  (Rec. Doc. 46 at 17).  Plaintiffs further allege that "Humana breached its duty to provide accurate Summary Plan Descriptions to the subscribers under 29 U.S.C. § 1022."  (Rec. Doc. 46 at 17).

Plaintiffs attach Appeal Letters to their Opposition that they sent to Humana.[3]  These Appeal Letters only pertain to seventeen (17) patients, so it is unclear if these are the only patients for whom the Plaintiffs assert claims under Section 1132(c).  The Appeal Letters contain two textual variations to request policy documents.  The first grouping includes seven (7) letters written on behalf of M. Barringer , S. Barrsotti[4], and J. Bosch, and those letters state:

> *If your decision in this appeal is adverse to my client* you are
> requested to produce the policy language, which you allege support
> your underpayment and any documents that you used to support
> your pricing of this matter.  Specifically, please produce the
> Insured's complete insurance policy relative to this claim, the
> appeals policies and procedures required by the policy, documents
> relied upon in establishing the price, copies of any review notes

---

[3] Humana takes issue with these letters, arguing that Plaintiffs failed to properly authenticate them.  But these letters constitute correspondence sent by Plaintiffs' counsel, and there is therefore no dispute over their admissibility at trial.  *See* Fed. R. Civ. Proc. 56(c).

[4] The two letters written on behalf of Ms. Barrsotti include slightly different language and state "[w]e are requesting as part of this appeal information regarding your denial of the appeal."

> that were prepared  in processing both the initial appeal and the
> initial underpayment, the name of the specialty of any healthcare
> provider who reviewed this matter, the applicable price by CPT
> code for a participant provider, and  all plan  documents.

(Rec. Doc. 204-2 at 2, 5, 8, 11, 14, 16; Rec. Doc. 204-3 at 20).

The second grouping includes twenty-six (26) letters on behalf of fourteen (14) patients and

states: "If your decision in this appeal is adverse to my client, we request that you provide us

with the following listed information and documents…."  (Rec. Doc. 204-2 at 19, 23, 29, 33, 38,

43, 49, 53, 58, 63, 68, 73, 83, 87, 92, 97, 102, 108, 113, 118; Rec. Doc. 204-3 at 2, 25, 37, 47,

53, 59, 67.)  These Appeal Letters then enumerate twenty-seven (27) types of requested

documents.

   To properly request documents pursuant to Section 1132(c), the request for plan

documents must be written and must provide clear notice of the documents it seeks.  *See Fisher*,

895 F.2d at 1077; *Kollman v. Hewitt Associates, LLC*, 487 F.3d 138, 146 (3d Cir. 2007);

*Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 655 (4th Cir. 1996).  "[T]he touchstone is whether

the request provides the necessary clear notice to a reasonable plan administrator which, given

the context of the request, should be provided."  *Kollman*, 487 F.3d at 146.  *See also Fisher*, 895

F.2d 1077 ("Nothing in either the request or the response indicates that Metropolitan knew or

should have known that Fisher had requested a copy of any document relating to the Litton

Plan.").

   Humana argues that the conditional requests in the Appeal Letters did not constitute clear

notice.  The Court disagrees.  The Appeal Letters clearly indicate that the administrator should

provide the specified documents if the administrator ultimately denies the appeal; the conditional

request does not render this request ambiguous.  Rather, a reasonable administrator would know

that upon denying an appeal, the administrator should provide the enumerated documents based

on the request in the letters.  The Court thus finds that these letters satisfy the clear notice requirement.

The Court recognizes that the Appeal Letters, attached as two large exhibits to Plaintiffs' opposition with no organization of any kind, only constitute clear notice of document requests for seventeen (17) out of the fifty-four (54) patients for whom Plaintiffs present claims.  It is not evident whether Plaintiffs wish to maintain their Section 1132(c) claims on behalf of the other patients, or whether Plaintiffs only assert those claims on behalf of those patients for whom Plaintiffs have provided letters.  Plaintiffs shall therefore (1) write to the Court and clarify which of the 54 Patients on behalf of whom Plaintiffs assert Section 1132(c) claims, and (2) provide the supporting documentation for each of those patients' clear notices of document requests within fifteen (15) days of this Order & Reasons.  If Plaintiffs fail to satisfy both steps for those remaining patients, the Court will grant summary judgment to Humana on Plaintiffs' Section 1132(c) claims for those patients.

### b.     Statute of Limitations

Humana next argues that Plaintiffs' Section 1132(c) claims are prescribed because they are subject to a one-year statute of limitations.  ERISA does not explicitly provide a statute of limitations period for actions under § 1132(c).  *Hatteberg v. Red Adair Co., Inc. Employees' Profit Sharing Plan and its Related Trust,* 79 Fed. Appx. 709, 715 (5th Cir.2003).  Because there is no Fifth Circuit authority on the issue, the Court must look to analogous state law to determine the relevant limitations period. See *McClure v. Zoecon, Inc.,* 936 F.2d 777, 778 (5th Cir.1991).  Here, the Court must determine whether the claim is contractual in nature, and thus governed by the prescriptive period of ten years for personal actions pursuant to Article 3499, or delictual in nature, and thus governed by a one year prescription pursuant to Article 3492.  *Ames v. Ohle,* 97

31

So.3d 386, 393 (La. App. 4 Cir. 2012); *Trinity Universal Ins. Co. v. Horton,* 756 So.2d 637, 638 (La. App. 2 Cir. 2000).

Here, Plaintiffs' claims seek damages under Section 1132(c), which provides statutory damages up to $100 for each day of an administrator's noncompliance.  In *Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, the Fifth Circuit applied Texas' two-year statute of limitations for tort actions, rather than Texas' four-year statute of limitations for contract actions, when the plaintiff sought statutory damages under 29 U.S.C. § 1132(c) for the defendant's alleged failure to notify under 29 U.S.C. § 1166.  389 F.3d 504, 510 (5th Cir. 2004). In its reasoning, the Fifth Circuit noted that "[w]hile the plain language of section 1166 itself offers little insight into how the provision should be characterized for statute of limitations purposes, the damages remedy [Section 1132(c)] does." *Id.* at 509.  The Fifth Circuit went on to distinguish claims for statutory damages under Section 1132(c) from those claims that seek to recover plan benefits under 29 U.S.C. § 1132(a)(1)(B), stressing that Section 1132(c) "does not refer to any underlying employee benefit plan, and the formula for statutory damages cannot plausibly be characterized as an effort to redress the breach of any contractual obligation created by an employee benefit plan." *Id.*  The court therefore applied Texas's two-year statute of limitation that is found in Texas's unfair insurance practices section of the Texas Insurance Code.

Although Plaintiffs' claims in the instant case arise under Sections 1024 and 1022, and not Section 1166, the Fifth Circuit's reasoning in *Lopez* is applicable because the damages remedy is the same.  As in *Lopez*, Plaintiffs seek statutory damages under Section 1132(c) and do not seek damages that arise under the benefit plans.  Accordingly, this Court finds that the claims do not arise under the contracts and are therefore not subject to the contractual ten-year

prescriptive period.  Rather, the one-year delictual prescriptive period is the proper limitation period under Louisiana Law.

Based on the materials before the Court, it is uncertain which claims are prescribed because it is not clear when the limitations period started for each patient.  It is therefore necessary for the Plaintiffs to supplement the materials and specify, based on the supplemented materials or other evidence in the record, when the prescriptive period began for *each* patient's Section 1132(c) claim(s).  Humana will then have an opportunity to respond.  Plaintiffs shall provide this material on or before fifteen (15) days from entry of this Order & Reasons.

### c.        The Proper Administrator

Humana contends that Plaintiffs cannot bring Section 1132(c) claims against Humana on behalf of four patients, R.P. Bryan, L. O'Brien, K. Stafford, and J. Sheehan, because Humana did not serve as the Plan Administrator under those patients' plans.  Section 1132(c) provides that a court may use its discretion to hold an *administrator* liable for statutory penalties of up to $100 per day.  29 U.S.C. 1132(c)(1).  Unlike Section 1132(a)(1)(b), which does not limit the scope of defendants, Section 1132(c) specifies that only an "administrator" can be held liable.  The term "administrator" is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A)(i).

In *Fisher*, the Fifth Circuit suggested in dicta that an entity other than the named administrator may be held liable under Section 1132(c) as a de facto administrator where the plan delegates the administrator's duties to that entity.  *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990).  Moreover, the Fifth Circuit has affirmed a district court's decision that adopted the de facto administrator doctrine.  *Lawrence v. Jackson Mack Sales,* 837 F. Supp. 771, 790 (S.D.Miss.1992), *aff'd,* 42 F.3d 642 (5th Cir.1994).  Another district court within the

Fifth Circuit applied the de facto administrator doctrine after finding it was supported by "the

weight of authority."  *Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 618 (W.D. Tex. 2013).

Outside of the Fifth Circuit, there is a circuit split as to whether an entity can be held liable as a

de facto administrator under ERISA provisions other than Section 1132(a)(1)(b).  *See, e.g.,*

*Rosen v. TRW, Inc.,* 979 F.2d 191, 193–94 (11th Cir.1992) ("[W]e hold that if a company is

administrating the plan, then it can be held liable for ERISA violations, regardless of the

provisions of the plan document."); *Law v. Ernst & Young,* 956 F.2d 364, 372–73 (1st Cir.1992).

*But see, e.g., McKinsey v. Sentry Ins.,* 986 F.2d 401, 404–05 (10th Cir.1993) (rejecting argument

that entity can be de facto administrator); *cf. Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 300

(9th Cir.1989) (expressing reluctance to hold entities other than the named plan administrator

liable for statutory violations).

   While Section 1132(a)(1)(B) is distinguishable from Section 1132(c) because Section

1132(a)(1)(B) does not purport to limit the scope of defendants, the Fifth Circuit's analysis in

*Lifecare* is instructive.  In *Lifecare,* the Fifth Circuit held that a third party administrator is not

insulated from Section 1132(a)(1)(B) liability and that third party administrator liability is

contingent on whether the third party exercised "actual control" over the claims administration.

*Id.* at 844.  To determine whether a third party administrator effectuated "actual control" over

claims administration, the Fifth Circuit directed district courts to engage in a functional analysis.

703 F.3d at 844-45.  The Fifth Circuit explained its rationale, emphasizing that "the proper party

defendant in an action concerning ERISA benefits is the party that controls administration of the

plan." *Id.* at 845.  The same is true here.  A third party administrator, who exercises control over

the plan documents and administers the claims process, should not be immune from liability

under Section 1132(c) merely because the plan does not identify the third party administrator

under the title of "Plan Administrator."  If Humana maintained control over the plan documents, Plaintiffs should have recourse against Humana under Section 1132(c) even though Humana did not formally serve as the "Plan Administrator."   Indeed, it would be an absurd result if the Court found Humana liable under Section 1132(a)(1)(B) based on a finding that Humana exercised actual control over the plan, but allowed Humana to maintain immunity from claims that it failed to timely respond to plan document requests under Section 1132(c).  Along similar lines, the Court can imagine a situation where a plan delegates all authority to a third party administrator, and the Plan Administrator does not even have ready access to plan documents.  If the Court could not apply the de facto administrator doctrine in such a situation, a plaintiff would be left with no remedy.  This is surely not the outcome Congress intended when it fashioned the Section 1132(c) remedy.  The Court thus finds the logical and consistent interpretation of Section 1132(c) is that an entity can be liable if the entity is a de facto administrator and exercises actual control over the claims administration.

As such, the Court's analysis for these four patients is the same as that for Humana's Motion for Summary Judgment on the Section 1132(a)(1)(B) claims for those four patients. Incorporating this analysis, the Court will therefore grant summary judgment as to the Section 502(c) claims of L. O'Brien and deny summary judgment as to the claims of R. P. Bryan, K. Stafford, and J. Sheehan.

In sum, Humana's Motion for Partial Summary Judgment as to Plaintiffs' 502(c) Claims (Rec. Doc. 170) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** as to the Section 502(c) claims of L. O'Brien.  It is **DENIED** as to the Section 502(c) claims of R.P. Bryan, K. Stafford, and J. Sheehan.  The Court withholds ruling on the Section 502(c) claims based on other patients until Plaintiffs provide further information.

35

Specifically, the Court orders Plaintiffs to (1) write to the Court and clarify which of the 54 Patients on behalf of whom Plaintiffs assert Section 1132(c) claims, and (2) provide the supporting documentation for each of those patients' clear notices of document requests within fifteen (15) days of this Order & Reasons.  If Plaintiffs fail to satisfy both steps for those remaining patients, the Court will grant summary judgment on Plaintiffs' Section 1132(c) claims for those patients in favor of Humana.  Plaintiffs shall also supplement the materials before the Court and specify, based on the supplemented materials or other evidence in the record, when the prescriptive period began for *each* patient's Section 1132(c) claim(s).  Humana will then have an opportunity to respond.  Plaintiffs shall provide this material on or before fifteen (15) days from entry of this Order & Reasons.

### F.   Humana's Motion for Partial Summary Judgment Based on Plaintiffs' Failure to Exhaust Administrative Remedies (Rec. Doc. 171)

#### 1.   Parties' Arguments

Finally, Humana asks the Court to grant summary judgment on Plaintiffs' claims based on those patients who failed to exhaust their administrative remedies.  Humana avers that "[i]t is well-established that litigants pursuing ERISA claims are first required to exhaust all available administrative remedies."  (Rec. Doc. 171-2 at 3).  Here, Humana argues that three (3) patients failed to file formal appeals, and eight (8) patients requested a reconsideration of the payment but did not style their inquiry as an appeal and did not include an assignment of rights from the patient, as required by the patients' plans.  (Rec. Doc. 171-2 at 5).  Humana avers that those patients who failed to include an assignment of rights never filed a formal appeal, since the Provider Correspondence Department, and not the Appeals and Grievances Department, handled such correspondence.

Plaintiffs oppose the motion and argue that Humana's consistent denial of appeals rendered the appeals process futile, and thus the failure to file an appeal is not an impediment to filing suit to recover benefits.  (Rec. Doc. 204 at 3).  Plaintiffs also attach Appeal Letters, which they argue highlight a disputed material fact as to whether patients K. Mallory, R. Bryan, R. Bosch, L. Bishop, T. Wells, D. Grab, J. Williamson, and E. Kennedy filed second level appeals. (Rec. Doc. 204 at 3).

Humana replies, arguing that Plaintiffs' Appeal Letters are not competent summary judgment evidence because they are not substantiated by declaration or affidavit.  (Rec. Doc. 221 at 2).  Humana further contends that the Appeal Letters only allegedly demonstrate appeals on behalf of four (4) patients.  (Rec. Doc. 221 at 4).  Humana argues that the letters failed to include an assignment of rights for those patients, as required by the Plans, and therefore do not constitute formal appeals.  (Rec. Doc. 221 at 4-6).  Finally, Humana avers that Plaintiffs have failed to make a showing of futility, a necessary requirement to overcome the administrative exhaustion requirement.  (Rec. Doc. 221 at 7).

Plaintiffs filed a sur-reply and contend that Humana's declarations are not competent evidence because they are not dated.  (Rec. Doc. 235 at 1-2).  Plaintiffs also argue that there is a disputed material fact as to whether the administrative appeals were futile, so the Court should deny summary judgment.  (Rec. Doc. 235 at 3).

### 2.    Law and Analysis

Humana argues that the Court should grant summary judgment for Plaintiffs' failure to exhaust administrative remedies on the following claims:

- K. Mallory, service provided by St. Charles on 10/12/2010;
- K. Mallory, service provided by St. Charles on 4/19/2012;
- T. Lymuel, service provided by Center on 8/22/2008;
- R.P. Bryan, service provided by St. Charles on 12/29/2011;

- P. Schembre, service provided by physician associated with the Center on 9/27/2013
- J.R. Bosch, service provided by St. Charles on 5/19/2011;
- L. Bishop, service provided by Center on 10/30/2012;
- T. Wells, service provided by Center on 8/26/2011;
- K. Stafford, service provided by physicians associated with the Center f on 10/3/2009;
- D. Grab, service provided by St. Charles on 6/14/2012;
- J. Williamson, service provided by St. Charles on 9/13/2012;
- E. Kennedy, service provided by St. Charles on 12/21/2011.

Humana argues that the Court should grant summary judgment on those claims because (1) those

patients failed to exhaust their administrative remedies and Plaintiffs fail to demonstrate that

exhaustion was futile; and (2) Plaintiffs' Appeal Letters do not correspond to all of the claims at

issue, and those that do, either named the wrong provider or failed to include an assignment of

rights from the patient.[5]   The Court will address each argument.

### a.      Futility Exception

"[C]laimants seeking benefits from an ERISA plan must first exhaust available

administrative remedies under the plan before bringing suit to recover benefits." *McGowin v.*

*ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (citing Bourgeois v. Pension Plan for

Employees of Santa Fe Int'l Corp., 215 F.3d 475, 479 (5th Cir.2000)).  The Fifth Circuit outlined

the purpose of the exhaustion requirement, noting that it serves to (1) uphold Congress' desire

that ERISA trustees, and not federal courts, be responsible for their actions; (2) provide a clear

administrative record in the case of future litigation; and (3) ensure that any judicial review of

ERISA fiduciary action is made under the arbitrary and capricious standard and not reviewed *de*

*novo.  Denton v. First Nat. Bank of Waco, Texas* 765 F.2d 1295, 1300 (5th Cir. 1985).  The Fifth

Circuit, however, recognizes an exception to the exhaustion requirement when such efforts

would be futile.  *See Hall v. National Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997).  A

---

[5] Humana takes issue with these letters, arguing that Plaintiffs failed to properly authenticate them.  But these letters constitute correspondence sent by Plaintiffs' counsel, and there is therefore no dispute over their admissibility at trial.  *See* Fed. R. Civ. Proc. 56(c).

claimant can only demonstrate futility when the plan administrator is biased or hostile against the claimant. *Denton*, 765 F.2d at 1302. *See also McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) ("A failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility."). *See generally Bourgeois v. Pension Plan for the Emples. of Santa Fe Int'l Corps.,* 215 F.3d 475, 479 (5th Cir.2000)(citing also the stricter standard requiring the claimant to show a " 'certainty of an adverse decision' " to warrant futility exception) (quoting *Communications Workers of America v. AT & T,* 40 F.3d 426, 433 (D.C.Cir.1994)). Explaining the high standard for futility, the Fifth Circuit noted that under a lower standard for the exhaustion exception, "benefit disputes would not only be more numerous and more often frivolous, but less defined as a result of this evasion of the congressionally mandated process." *Denton*, 765 F.2d at 1303. Further, the Fifth Circuit has held that when faced with a group of plaintiffs, those plaintiffs who did exhaust their administrative remedies cannot serve as "blanket exhaustions" and fulfill the exhaustion requirement for other plaintiffs in the group. *Harris v. Trustmark Nat. Bank*, 287 F. App'x 283, 295 (5th Cir. 2008).

Plaintiffs cite to the unsuccessful appeals of thirty other patients as evidence that the administrative process was futile, but such evidence does not prove futility for the group as a whole. The denial of appeals, without more, does not demonstrate bias or hostility on Humana's part. Further, Humana's disposition of other claims has no bearing on these particular patients' appeals. If the Court were to waive the exhaustion requirement based on the denial of other, similarly situated plaintiffs, this would open the floodgates and allow plan beneficiaries to circumvent the administrative process by pointing to another patient's unsuccessful appeal. Such an outcome would undermine Congress's intent when it fashioned the exhaustion requirement, and the Court therefore refuses to apply the futility exception here.

### b. Individual Patients

Now that the Court has disposed of Plaintiffs' futility argument, the Court must determine whether there is a disputed material fact as to each patient's exhaustion requirement. As this is a fact-intensive analysis, the Court will examine each patient in turn.

- **K. Mallory**

Humana seeks summary judgment for claims stemming from services provided to patient, K. Mallory, on October 10, 2010 and April 19, 2012 by St. Charles Hospital. Plaintiffs provided two Appeal Letters sent on behalf of K. Mallory, but Humana contends that these letters are not sufficient because those letters cite the Center, and not St. Charles, as the provider. That distinction is immaterial because the appeals both sought administrative review of the patient's underlying procedure: one letter sought review of an adverse decision for the October 10, 2010 procedure (Rec. Doc. 204-3 at 1), and the other letter sought review an adverse decision for the April 19, 2012 procedure (Rec. Doc. 204-2 at 81). As the purpose of the exhaustion requirement is to create an administrative record and to ensure that federal judges do not review benefits decisions *de novo*, that intent is served as long as there is an administrative review of the underlying claim. It is of no consequence to what entity the patient assigns her claim, as long as the underlying claim goes through the appropriate administrative channels prior to judicial review.

If, however, both the Center for Restorative Breast Surgery, LLC and St. Charles Hospital assert separate claims for the same service provided, only the provider who actually delivered the medical care can seek compensation – there will obviously be no award of double damages. Moreover, if the Center and St. Charles provided different services during the same procedure, i.e. if the Plaintiffs seek compensation on behalf of both providers for separate

40

services during K. Mallory's October 10, 2010 procedure, the parties shall communicate this to the Court and a re-urging of this motion may be appropriate.  As this Court has indicated throughout this Order & Reasons, the disposition of these motions has been a challenge due to the lack of clarity and precision with the presentation of Plaintiffs' claims and the record before the Court.  Accordingly, if the Court has misconstrued Plaintiffs' claims, and Plaintiffs seek benefits on behalf of the Center and St. Charles for different services rendered during K. Mallory's procedures, then the parties shall clarify this point.

- **T. Lymuel**

Humana argues that the Court should dismiss the claim for services rendered to Ms. Lymuel by the Center on August 22, 2008 because Ms. Lymuel never appealed the administrative denial of her benefits.  In response, Plaintiffs included two letters written on behalf of Ms. Lymuel.   These letters, however, dispute overpayment claims asserted by Humana, and do not qualify as Appeal Letters.  Since Plaintiffs have failed to provide *any* evidence of an appeal, the Court finds it is an undisputed material fact that Ms. Lymuel failed to exhaust her administrative remedies, and the claims associated with this patient are dismissed without prejudice.

- **R.P. Bryan**

Humana argues that the Court should grant summary judgment on R.P. Bryan's claim because her Appeal Letter did not include an assignment of rights from the patient.  Ms. Bryan's plan includes a section entitled "Assignments and Representatives," which states:

> In addition, a covered person may designate an authorized representative to act on his or her behalf in pursuing a benefit claim or appeal.  The designation must be explicitly stated in writing and it must authorize disclosure of protected health information with respect to the claim by this Plan, Humana and the authorized representative to one another.  If a document is not

> sufficient to constitute a designation of an authorized representative, as determined by Humana, then this Plan will not consider a designation has been made.  An assignment of benefits does not constitute designation of an authorized representative.

(Rec. Doc. 168-6 at 32).  Latonia Gentry, a Customer Service Analyst with Humana, stated in her Declaration that "No formal appeal was ever filed for the services rendered by the Center to [R.P. Bryan] on December 29, 2011."  (Rec. Doc. 171-7 at 1).  Humana argues that there was no formal appeal because R.P. Bryan failed to include an assignment of her rights.  (Rec. Doc. 221 at 4).  Plaintiffs, however, included an Appeal Letter written on behalf of R.P. Bryan for the December 29, 2011 service and states:

> I have also enclosed a copy of a document that is entitled "Assignment of Benefits and Authorization for the Hospital to Act as your Authorized Representative in Claims for Benefits" that has been signed by your insured.  This legal document specifically sets forth your insured's assignment of all applicable insurance benefits for the professional services provided by the Hospital.  Further in said document, your insured also has expressly: 1) appointed the Hospital and anyone acting on behalf of the Hospital as the insured's true lawful attorney to act on the insured's behalf to collect benefits related to the services provided to the hospital; 2) authorized the Hospital and anyone acting under authority from the Hospital to provide medical records and medical information compiled in the course of the insured's treatment for review and/or copying; 3) appointed the Hospital and anyone acting under its authority to act as the authorized representative as a claimant under ERISA; and 4) assigned the right to file appeals on the insured's behalf.

(Rec. Doc. 204-3 at 35-36).  This letter supports a finding that Plaintiffs submitted an assignment of R.P. Bryan's rights and conflicts with Ms. Gentry's assertion.  The Court thus finds there is a disputed material fact as to whether Plaintiffs submitted an assignment of R. P. Bryan's rights and finds that summary judgment is inappropriate at this time.

- **P. Schembre**[6]

Humana argues that the Court should dismiss the claim for services rendered to P. Schembre by physicians associated with the Center on September 27, 2013 because Ms. Schembre never appealed the administrative denial of her benefits.  Plaintiffs failed to include any Appeal Letters sent on behalf of Ms. Schembre or any evidence that Ms. Schembre exhausted her administrative remedies.  Accordingly, the Court finds it an undisputed fact that Ms. Schembre failed to exhaust her administrative remedies and dismisses her claim without prejudice.

- **J. R. Bosch**

Humana contends that J.R. Bosch failed to exhaust her administrative benefits for her service provided by St. Charles on May 19, 2011.   Plaintiffs provided an Appeal Letter sent on behalf of J. Bosch (Rec. Doc. 204-3 at 19), but Humana argues that this letter does not qualify as an Appeal Letter because counsel sent it on behalf of the Center and not St. Charles.  The Court has already rejected this argument for the claims pertaining to K. Mallory, so the Court will deny summary judgment on J. Bosch's claim.  The discussion pertaining to the Court's potential misinterpretation of the claims, as outlined in the section dedicated to K. Mallory, also applies here.

- **L. Bishop**

Humana argues that L. Bishop failed to exhaust her administrative remedies for her service provided by the Center on October 30, 2012.  Plaintiffs provided an Appeal Letter sent

---

[6] Although Humana noted in its Memorandum in Support of its Motion for Partial Summary Judgment that Plaintiffs submitted an appeal but no assignment of rights for Ms. Schembre, the Court was unable to find any letters in the attached exhibits.  This could be an error on the part of the Court, but the disorganization of the letters – two-hundred pages of letters lumped into two exhibits with no organization—rendered it difficult to find materials related to these eleven (11) patients.

on behalf of L. Bishop (Rec. Doc. 204-3 at 24), but Humana argues that this letter does not qualify as an Appeal Letter because counsel sent it on behalf of St. Charles Surgical Hospital and not the Center.  The Court has already rejected this argument for the claims pertaining to K. Mallory, so the Court will deny summary judgment on L. Bishop's claim.  Again, the discussion pertaining to the Court's potential misinterpretation of the claims, as outlined in the section dedicated to K. Mallory, also applies.

Humana further contends that it never received an assignment of rights on behalf of L. Bishop and attaches a declaration by Latonia Gentry, a Humana Customer Service Analyst, as support for this contention. (Rec. Doc. 171-2 at 12).  L. Bishop's Appeal Letter, however, states that it attached a signed assignment of benefits.  (Rec. Doc. 204-3 at 24-25).  Accordingly, the Court finds a disputed material fact as to whether Plaintiffs supplied Humana with an assignment of benefits signed by L. Bishop and will therefore deny summary judgment on that claim.

- **T. Wells**

Humana argues that T.Wells failed to exhaust her administrative remedies for her service provided by the Center on August 26, 2012.  Ms. Wells' plan includes a section entitled, "Designation of an Authorized Representative," which states:

> You may authorize someone else to file and pursue a claim or file an appeal on your behalf.  Generally, this authorization must be in writing and signed by you….An assignment to a health care provider for purposes of payment does not constitute appointment of an authorized representative under these claims procedures.

(Rec. Doc. 171-16 at 8-9).  Ms. Gentry stated in her Declaration that "No Assignment of Rights from [T.Wells] was received.  As such, the correspondence was handled by the Provider Correspondence Department, not the Appeals and Grievances Department."  (Rec. Doc. 171-15

at 1).  Plaintiffs, however, included an Appeal Letter written on behalf of T. Wells for the August

26, 2011 service and states:

> I have also enclosed a copy of a document that is entitled
> "Assignment of Benefits and Authorization for the Hospital to Act
> as your Authorized Representative in Claims for Benefits" that has
> been signed by your insured.  This legal document specifically sets
> forth your insured's assignment of all applicable insurance benefits
> for the professional services provided by the Hospital.  Further in
> said document, your insured also has expressly: 1) appointed the
> Hospital and anyone acting on behalf of the Hospital as the
> insured's true lawful attorney to act on the insured's behalf to
> collect benefits related to the services provided to the hospital; 2)
> authorized the Hospital and anyone acting under authority from the
> Hospital to provide medical records and medical information
> compiled in the course of the insured's treatment for review and/or
> copying; 3) appointed the Hospital and anyone acting under its
> authority to act as the authorized representative as a claimant under
> ERISA; and 4) assigned the right to file appeals on the insured's
> behalf.

(Rec. Doc. 204-3 at 46-47).    This letter supports a finding that Plaintiffs did submit an

assignment of patient's rights and conflicts with Ms. Gentry's assertion.  The Court thus finds

there is a disputed material fact as to whether Plaintiffs submitted an assignment of T. Wells'

rights and finds that summary judgment is inappropriate at this time.

- **K. Stafford**

Humana argues that the Court should dismiss the claim for services rendered to K.

Stafford by the physicians associated with the Center on October 3, 2009, because Ms. Stafford

never appealed the administrative denial of her benefits.  Plaintiffs failed to include any Appeal

Letters sent on behalf of Ms. Stafford or any evidence that Ms. Stafford exhausted her

administrative remedies.[7]  Accordingly, the Court finds it an undisputed fact that Ms. Stafford

failed to exhaust her administrative remedies and dismisses her claim without prejudice.

- **D. Grab**

Humana contends that the Court should dismiss the claim for services rendered to D.

Grab by St. Charles on June 14, 2012,[8] because Ms. Grab failed to exhaust her administrative

remedies since her Appeal Letter, dated July 20, 2012, failed to include an assignment of rights.

As an attachment to Plaintiffs' opposition, Plaintiffs included an Appeal Letter dated September

8, 2012, and sent on behalf of Ms. Grab for the June 14, 2012 service.  That letter states:

> I have also enclosed a copy of a document that is entitled
> "Assignment of Benefits and Authorization for the Hospital to Act
> as your Authorized Representative in Claims for Benefits" that has
> been signed by your insured.  This legal document specifically sets
> forth your insured's assignment of all applicable insurance benefits
> for the professional services provided by the Hospital.  Further in
> said document, your insured also has expressly: 1) appointed the
> Hospital and anyone acting on behalf of the Hospital as the
> insured's true lawful attorney to act on the insured's behalf to
> collect benefits related to the services provided to the hospital; 2)
> authorized the Hospital and anyone acting under authority from the
> Hospital to provide medical records and medical information
> compiled in the course of the insured's treatment for review and/or
> copying; 3) appointed the Hospital and anyone acting under its
> authority to act as the authorized representative as a claimant under
> ERISA; and 4) assigned the right to file appeals on the insured's
> behalf.

(Rec. Doc. 204-3 at 52-53).  As such, the Court finds there is a disputed material fact as to

whether D. Grab provided an assignment of rights, and summary judgment is not appropriate.

---

[7] Humana states in its Memorandum in Support of its Motion for Partial summary Judgment that Plaintiffs
sent an Appeal Letter on behalf of K. Stafford, but the Court did not find this letter in Plaintiffs' attachments or in
the provided record.

[8] Humana states the date of service was on June 14, 2012 in its Memorandum in Support of its Motion of
Partial Summary Judgment (Rec. Doc. 171-2 at 13) but states that the service occurred on July 14, 2012 in its reply.
Based on the body of evidence, including Plaintiffs' Appeal Letter, the Court concludes it occurred on June 14,
2012.

- **J. Williamson**

Humana argues that the Court should grant summary judgment on the claims for services rendered to J. Williamson by St. Charles on September 13, 2012 for Ms. Williamson's failure to exhaust her administrative remedies.  Plaintiffs provided an Appeal Letter that provided for an assignment of rights and also attached a copy of Ms. Williamson's signed assignment of rights. (Rec. Doc. 204-3 at 57-63).  Humana avers that it has no record of receiving the assignment document.  (Rec. Doc. 221 at 6).  As support for its assertion, Humana attaches a Declaration by Ms. Gentry that attests to this point.  Based on this evidence, the Court finds there is a disputed material fact as to whether J. Williamson or the Plaintiffs sent Humana Ms. Williamson's assignment of right.  Accordingly, the Court will not grant summary judgment on Ms. Williamson's claim.

- **E. Kennedy**

Finally, Humana seeks summary judgment on claims for services provided to E. Kennedy on December 21, 2011 by St. Charles for failure to exhaust her administrative remedies. Humana argues that it did not receive an assignment of rights signed by Ms. Kennedy.  (Rec. Doc. 171-2 at 15, 221 at 6).  Humana attaches a Declaration by Ms. Gentry testifying to this contention.  In response, Plaintiffs supplied an Appeal Letter written on behalf of E. Kennedy for the December 21, 2011 service and states:

> I have also enclosed a copy of a document that is entitled "Assignment of Benefits and Authorization for the Hospital to Act as your Authorized Representative in Claims for Benefits" that has been signed by your insured.  This legal document specifically sets forth your insured's assignment of all applicable insurance benefits for the professional services provided by the Hospital.  Further in said document, your insured also has expressly: 1) appointed the Hospital and anyone acting on behalf of the Hospital as the insured's true lawful attorney to act on the insured's behalf to collect benefits related to the services provided to the hospital; 2)

> authorized the Hospital and anyone acting under authority from the
> Hospital to provide medical records and medical information
> compiled in the course of the insured's treatment for review and/or
> copying; 3) appointed the Hospital and anyone acting under its
> authority to act as the authorized representative as a claimant under
> ERISA; and 4) assigned the right to file appeals on the insured's
> behalf.

(Rec. Doc. 204-2 at 48-49).  Based on these facts, there is a disputed material fact as to whether

Plaintiffs sent Humana an assignment of rights signed by E. Kennedy, and the Court will not

grant summary judgment at this time.

In sum, Humana's Motion for Partial Summary Judgment Based on Plaintiffs' Failure to

Exhaust Administrative Remedies (Rec. Doc. 171) is **GRANTED IN PART AND DENIED IN**

**PART**.  The Motion is **GRANTED** as to Plaintiffs' claims asserted on behalf of T. Lymuel, P.

Schembre, and K. Stafford.  The Motion is **DENIED** as to Plaintiffs' claims asserted on behalf

of K. Mallory, R. P. Bryan, J.R. Bosch, L. Bishop, T. Wells, D. Grab, J. Williamson, and E.

Kennedy.

## III.    CONCLUSION

For the aforementioned reasons,

**IT IS ORDERED** that Humana's Motion for Partial Summary Judgment on Plaintiffs'

Procedural Violation Claims (Rec. Doc. 164) is **GRANTED**;

**IT IS FURTHER ORDERED** that Humana's Motion for Partial Summary Judgment for

Dismissal of ERISA Claims Time Barred by Contractual Limitations Period (Rec. Doc. 167) is

**DENIED**;

**IT IS FURTHER ORDERED** that Humana's Motion for Partial Summary Judgment

Based on Improper Defendant (Rec. Doc. 168) is **GRANTED IN PART** and **DENIED IN**

PART.  It is **GRANTED** as to the claims of L. O'Brien.  It is **DENIED** as to the claims of R.P. Bryan, K. Stafford, and J. Sheehan;

IT IS FURTHER ORDERED that Humana's Motion for Partial Summary Judgment as to Plaintiffs' 502(c) Claims (Rec. Doc. 170) is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **GRANTED** as to the Section 502(c) claims of L. O'Brien.  It is **DENIED** as to the Section 502(c) claims of R.P. Bryan, K. Stafford, and J. Sheehan.  The Court withholds ruling on the Section 502(c) claims based on other patients until Plaintiffs provide further information.  Specifically, the Court orders Plaintiffs to (1) write to the Court and clarify which of the 54 Patients on behalf of whom Plaintiffs assert Section 1132(c) claims, and (2) provide the supporting documentation for each of those patients' clear notices of document requests within fifteen (15) days of this Order & Reasons.  If Plaintiffs fail to satisfy both steps for those remaining patients, the Court will grant summary judgment on Plaintiffs' Section 1132(c) claims for those patients in favor of Humana.  Plaintiffs shall also supplement the materials before the Court and specify, based on the supplemented materials or other evidence in the record, when the prescriptive period began for *each* patient's Section 1132(c) claim(s).  Humana will then have an opportunity to respond.  Plaintiffs shall provide this material on or before fifteen (15) days from entry of this Order & Reasons;

IT IS FURTHER ORDERED that Humana's Motion for Partial Summary Judgment Based on Plaintiffs' Failure to Exhaust Administrative Remedies (Rec. Doc. 171) is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **GRANTED** as to Plaintiffs' claims asserted on behalf of T. Lymuel, P. Schembre, and K. Stafford.  The motion is **DENIED** as to Plaintiffs' claims asserted on behalf of K. Mallory, R. P. Bryan, J.R. Bosch, L. Bishop, T. Wells, D. Grab, J. Williamson, and E. Kennedy;

**IT IS FURTHER ORDERED** that the Plaintiffs shall submit to the Court a chart detailing *each* ERISA claim asserted and the relevant facts, including the patient on behalf of whom the claim is asserted, the date of service, the provider, dates of appeals, dates of document requests, and any other material information that relates to the claim.  Plaintiffs shall provide this chart within thirty (30) days of this Order & Reasons.

New Orleans, Louisiana this 15th day of July, 2015.

UNITED STATES DISTRICT JUDGE