UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTER FOR RESTORATIVE<br>BREAST SURGERY, L.L.C., ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-4346 |
| HUMANA HEALTH BENEFIT<br>PLAN OF LOUISIANA, INC., ET AL. | SECTION "L" (2) |

**ORDER & REASONS**

Before the Court is Defendants' Humana Health Benefit Plan of Louisiana, Inc., Humana Inc., and Humana Health Plan, Inc.'s (collectively "Humana") Motion for Partial Summary Judgment as to Plaintiffs' ERISA 502(c)[1] Claims. (Rec. Doc. 170). Having considered the applicable law and the parties' memoranda, the Court now issues this Order & Reasons.

**I. BACKGROUND**

This case arises out of an alleged underpayment for medical services. The Center for Restorative Breast Surgery, LLC ("Center") performs post-mastectomy breast reconstruction medical services, and St. Charles Surgical Hospital ("St. Charles") provides hospital services in connection with those procedures. Both the Center and St. Charles provided these services to patients who were participants in Humana's Employee Retirement Income Security Act ("ERISA") plan. The ERISA plan permits patients to obtain services from out-of-network providers, such as the Center and St. Charles, and in turn Humana calculates and pays reimbursements to the providers of those services. In calculating reimbursements such as the one at issue, Humana alleges they consider the reasonable and customary rate.

---

[1] Section 502 of ERISA is set forth in 29 U.S.C. § 1332 and section 503 of ERISA is set forth in 29 U.S.C. § 1333. Courts, and the parties in this case, use these references interchangeably. As such, the Court will refer to both throughout this Order & Reasons.

The Center and St. Charles filed this action in the Civil District Court for the Parish of Orleans seeking benefits on behalf of their patients and seeking reimbursements, on their own behalf, for services they had provided to patients covered by Humana (collectively "the Plaintiffs"). On November 17, 2010, Humana removed to this Court on the basis that the Center and St. Charles' claims were preempted by ERISA. (Rec. Doc. 1). On December 12, 2010, the Center and St. Charles sought remand (Rec. Doc. 9), which the Court denied on March 22, 2011 (Rec. Doc. 22). Humana then filed a Motion to Dismiss on April 15, 2011, and while it was pending, the Center and St. Charles filed a Motion for Leave to Amend their Complaint. (Rec. Doc. 33). On July 20, 2011, the Court granted the Center and St. Charles' Motion for Leave to Amend their Complaint and denied Humana's Motion to Dismiss the original complaint. (Rec. Doc. 45).

In their amended complaint, the Center and St. Charles assert claims against Humana under ERISA and state law. (Rec. Doc. 46). With respect to their ERISA claims, the Center and St. Charles seek recovery as assignees of their patients, asserting that Humana breached its fiduciary duty of loyalty and care, failed to provide full and fair review, and violated the claims procedures. The Center and St. Charles assert state law claims of detrimental reliance, fraud, negligent misrepresentation, breach of contract, and unjust enrichment, for which the Center and St. Charles seek recovery on their own behalf. They also claim Humana violated the Louisiana Unfair Trade Practices Act ("LUTPA") and the Louisiana Insurance Code. In response to the amended complaint, Humana filed a Motion to Dismiss the above-listed claims (Rec. Doc. 49). After that motion had been fully briefed by the parties (Rec. Docs. 49, 53, 56, 60), the Court stayed the proceedings on October 12, 2011 on the joint motion of the parties (Rec. Doc. 61). On September 9, 2013, the Court lifted the stay on the motion of the Center and St. Charles. (Rec.

2

Doc. 63). At the request of the parties, the Court continued the Motion to Dismiss the Amended Complaint.

On March 27, 2014, the Court granted Humana's Motion to Dismiss in part and denied it in part. (Rec. Doc. 65). Specifically, it concluded that the Center and St. Charles had sufficiently alleged their ERISA claims and their state law claims for detrimental reliance, fraud, negligent misrepresentation, and breach of contract claims, but not their unjust enrichment, LUTPA, and Louisiana Insurance Code claims. The Court denied Humana's Motion for Reconsideration. (Rec. Doc. 80). On July 7, 2014, Plaintiffs filed a Motion for Leave to File an Amended Exhibit 1 to the Amended Complaint in order to add patients to their Complaint. (Rec. Doc. 81). The Court granted Plaintiffs' leave on July 10, 2014.

To date, Plaintiffs bring this suit on behalf of themselves and as assignees of 109 patients. Fifty-four of those patients were members of employee group health plans governed by ERISA. The parties indicated to the Court that disposition of the ERISA claims would inform the disposition of the non-ERISA claims, so the Court bifurcated the proceedings and ordered the parties to proceed with the ERISA claims while staying the non-ERISA claims. (Rec. Doc. 117). While the Court initially ordered the parties to submit their briefs regarding the ERISA claims on February 23, 2015, Humana relayed to the Court that it wished to file a number of dispositive motions that would resolve many of the ERISA claims. The Court thus converted the February 23, 2015, briefing deadline into the deadline for the parties to submit dispositive motions. (Rec. Doc. 158). Humana consequently filed six (6) motions for summary judgment related to the ERISA claims.[2] The Court ruled on five (5) of these motions for summary judgment on July 15,

---

[2] Humana filed a Motion for Summary Judgment on Plaintiffs' Medicare Advantage Claims (Rec. Doc. 155), but the Court granted Plaintiffs' voluntary dismissal of those claims with prejudice (Rec. Doc. 240).

2015.  The Court now addresses Humana's sixth, and final, motion for summary judgment on the ERISA claims.

## II.   PRESENT MOTION

In its July 15, 2015 Order & Reasons (Rec. Doc. 251), the Court delayed ruling on Humana's final motion for summary judgment (Rec. Doc. 170), and ordered Plaintiffs to provide: 1) clarification regarding which of the 54 ERISA patients on behalf of whom Plaintiffs were asserting section 502(c) claims; and (2) supporting documentation for each of those patients' clear notices of documentation requests.  Plaintiffs timely filed the requested materials in their Response to Order to Show Cause.  (Rec. Doc. 256).  Humana filed a Response to Plaintiffs' Response (Rec. Doc. 271), and Plaintiffs consequently filed a Reply to Humana's Response (Rec. Doc. 272).  Having reviewed these filings, the Court will now dispose of Humana's Motion for Partial Summary Judgment as to Plaintiffs' ERISA 502(c) Claims.  (Rec. Doc. 170).

### A.   Humana's Motion for Partial Summary Judgment as to Plaintiffs' ERISA 502(c) Claims (Rec. Doc. 170) and the Court's Order to Show Cause (Rec. Doc. 251)

In its Motion for Partial Summary Judgment, Humana asserted that Plaintiffs failed to allege a cognizable violation of Section 502(c).  Humana also argued that Plaintiffs failed to allege any violation within the one-year statute of limitations.[3]  The Court agreed with Humana that these claims were not cognizable based on the documents presented by the Plaintiffs, but the Court declined to grant summary judgment.  The Court instead issued a Rule to Show Cause allowing Plaintiffs an opportunity to cure any insufficiencies by providing supporting documentation of their claims.  (Rec. Doc. 251).  Thus, the primary briefing materials on the

---

[3] These are the only two issues in Humana's motion remaining before the Court, as the Court ruled on all other asserted matters in its July 15, 2015 Order & Reasons.  *See* Rec. Doc. 215 at 28–34.

4

merits of the motion at issue were delivered after this Court's Order to Show Cause was issued July 15, 2015.  (Rec. Doc. 251).

### 1. Plaintiffs' Response to Order to Show Cause

Plaintiffs clarified which of the fifty-four ERISA patients were asserting section 502(c) claims in their Response to Order to Show Cause.  Plaintiffs aver that Humana failed to produce plan documents, in violation of ERISA section 502(c), for thirty-seven ERISA patients.  (Rec. Doc. 202).  Plaintiffs also provided supporting documentation in the form of appeal letters, assignment forms, and other formal memoranda for each of those patients' document requests.  These documents, Plaintiffs contend, satisfy the requirements of 29 U.S.C. § 1132(c) and render summary judgment inappropriate.  (Rec. Doc. 202 at 3).

Regarding prescription, Plaintiffs argue that nineteen of these claims are not prescribed because they were filed within 365 days of the patient's request for documents.  (Rec. Doc. 256 at 2–6).  For those claims filed more than 365 days after each patient's request, Plaintiffs claim that the Court's 701-day stay of the matter equitably tolled the prescriptive period.  (Rec. Doc. 256 at 6–10).  Plaintiffs support their argument with the reasoning of the Court's July 15, 2015, Order & Reasons, Rec. Doc. 251, where the Court held that the Plaintiffs' § 1132(a)(1)(B) claims were equitably tolled during the period of the stay.  (Rec. Doc. 256 at 1).

### 2. Humana's Response to Plaintiffs' Response to Order to Show Cause

Humana replies and argues that many of the Plaintiffs' claims are prescribed.  (Rec. Doc. 271 at 2–5).  Humana contends that while the Court's stay may have equitably tolled Plaintiffs' § 1132(a)(1)(B) claims, the stay did not equitably toll the § 1132(c) claims.  In support of this assertion, Humana characterizes § 1132(c) as a "penalty provision," and cites *Fisher v. Metro. Life Ins. Co.*, 894 F.2d 1073, 1077 (5th Cir. 1990), for the proposition that penalty provisions,

5

such as § 1132(c), must be strictly construed. (Rec. Doc. 271 at 3). With this in mind, Humana notes that sixteen of the seventeen claims for which Plaintiffs request equitable tolling began with a request for documents during the litigation stay. Humana argues that Plaintiffs ignored the stay by requesting these documents, and contends that it is not "equitable" to penalize Humana for failing to respond to requests delivered in violation of the stay. (Rec. Doc. 271 at 2–4). Humana also argues that patient R. Small's claim is prescribed on the grounds that even if this Court equitably tolls Small's claim, the claim will not be within the 365 day prescription period. (Rec. Doc. 271 at 4–5).

Humana further objects on the grounds that Plaintiffs provided incorrect and/or incomplete assignments for seven of the patients. (Rec. Doc. 271 at 5–7). Humana notes that Plaintiffs requested some documents pursuant to their authority as representatives of "the Center" when patients assigned rights to "the Hospital," and vice versa. (Rec. Doc. 271 at 5–7). Humana also notes that one of the patient's assignments is missing a signature page. (Rec. Doc. 271 at 6).

Humana further argues that Humana was not obligated to respond to twelve of the document requests, because Plaintiffs sent their document requests to Mr. King, outside counsel for Humana, rather than to the plan administrator. Humana cites § 1132(c) and argues that the statute does not expressly provide a cause of action for the failure of outside counsel to respond to a request. To recover under § 1132(c), a plaintiff must establish

> (1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request.

*Wargotz v. NetJets, Inc.*, No. 09–4789, 2010 WL 1931247, at *3 (D.N.J. May 13, 2010).

Notably, in the twelve document requests addressed to Mr. King, Plaintiffs' counsel began by stating, "Pursuant to our recent conversation, this will confirm that you will accept service of the above-referenced appeal on behalf of Humana." The first of these document requests was sent on February 3, 2012. (R. Doc. 271 at 3). Mr. King objected to the receipt of these document requests on February 27, 2015, over three years after the arrival of the first letter. (R. Doc. 273 at 4).

### 3. Plaintiffs' Reply to Humana's Response

Plaintiffs argue in their Reply to Humana's Response that regardless of the stay, Humana was obligated to produce the documents in question, and that Humana should not be allowed to evade that obligation by relying on the Court's hold on litigation. (Rec. Doc. 263 at 3). Plaintiffs also provide documentation correcting most of the incomplete filings identified by Humana, and argue that those documents which remain incomplete generate a material issue of fact. (Rec. Doc. 273 at 3). Plaintiffs additionally argue that Mr. King is legal representative and counsel of record for the administrators of the claims at issue, and that he affirmatively obligated himself to accept service on behalf of his clients. (R. Doc. 273 at 4). Plaintiffs aver that this satisfies the formal requirements of § 1132(c).

### III. LAW AND ANALYSIS

The Court finds that Humana asserts four arguments contesting the viability of Plaintiffs' ERISA section 502(c) claims in its Response to Plaintiffs' Response to Order to Show Cause: (1) seventeen of the claims fall under a one-year statute of limitations period and are therefore prescribed; (2) one of the claims is prescribed even if this Court equitably tolls the section 502(c) claims; (3) seven of the claims are not supported by sufficient documentation; and (4) twelve of the claims are founded on document requests which were sent to Humana's counsel, rather than

7

the plan administrator, and thus cannot provide the basis for a 502(c) claim. The Court will address each argument in turn.

### A. The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. The Applicable Law of ERISA

Pursuant to 29 U.S.C. § 1024(b)(4), an ERISA plan administrator, "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description…or other instruments under which the plan is established or operated." Section 1022(a) instructs that "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title." Any

administrator who fails or refuses to comply with such a request may, within the court's discretion, be held personally liable to the requesting party up to $100 for each day after the date of refusal.  29 U.S.C. 1132(c); *see Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990).  The Fifth Circuit has instructed that "as a penalty provision section 1132(c) must be strictly construed." *Fisher*, 895 F.2d at 1077.

### C. The Equitable Tolling of Plaintiffs' Section 502(c) Claims

In its Order & Reasons dated July 15, 2015, this Court equitably tolled eight claims involving five different ERISA patients.  (Rec. Doc. 251 at 13–17).  These claims were brought under ERISA section 502(a)(1)(B).  (Rec. Doc. 271 at 3).  The Court is now asked to equitably toll seventeen more claims, this time pursuant to ERISA section 502(c).  The Court can exercise its equitable powers whenever exceptional circumstances arise, although the Court recognizes that it should "sparingly" extend such relief.  *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95 (1990).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Having granted the Plaintiffs' request for equitable tolling for their section 502(a) claims, the Court finds no meaningful way to distinguish the current claims at issue.  Humana is correct to assert that section 502(c) is a penalty claim, and that penalty claims should be strictly construed.  *Fisher*, 895 F.2d at 1077.  However, the Plaintiffs' burden as articulated by the Supreme Court in *Pace* remains unchanged.  Pace, 544 U.S. at 18.  Plaintiffs have pursued their rights diligently, and the Court finds the same "extraordinary circumstances," i.e., the litigation stay requested by counsel for both parties, are present.  The Plaintiffs suspended all litigation while they pursued a settlement with Humana, and as this suspension was intended to benefit

both parties, it would be unjust if the 502(c) claims were barred simply because the plaintiffs were unable to file an amended complaint and join the suit.

Humana's efforts to distinguish the 502(c) claims from the 502(a) claims are unavailing. Humana asserts that because Plaintiffs filed document requests during the stay, they effectively waived their rights to equitable tolling regarding these requests. (Rec. Doc. 271 at 3–4). This logic is unpersuasive. Simply put, a litigation stay is not a license to ignore the document requests of patients. The litigation stay requested by the parties was granted for the purpose of resolving all claims, both those present and those yet to be asserted. Plaintiffs' document requests, if answered, would have expedited the process of identifying the remaining patients with viable claims against Humana, and the identification of patients with viable claims was in the best interests of a complete settlement. It would be unjust to allow Humana to use the litigation stay as a mechanism to hide information which ERISA statutorily obligates them to provide to patients.

However, the Court finds in its discretion that it is appropriate to limit the sanctions imposed by ERISA section 502(c). Plaintiffs ask this Court to nullify their own inaction during the stay, and to penalize that of Humana. The principles of equity cannot sustain a finding this skewed. Thus, while this Court will equitably toll the seventeen 502(c) claims contested by Humana, the Court will not fine Humana for its failure to provide documents relating to any of these seventeen patients during the litigation stay.

### D.  Prescription of R. Small's Section 502(c) Claim

In Plaintiffs' Response to Order to Show Cause, Plaintiffs asserted the section 502(c) claim of R. Small.  Plaintiffs calculate R. Small's claim as being filed within 364 days of the document request, after accounting for this Court's equitable tolling period of 701 days during the litigation stay.  Humana contests Plaintiffs' calculation of the length of the stay in their Response to Plaintiffs' Response, averring that the stay lasted 695 days—from October 12, 2011, to September 6, 2013.  Accounting for this alleged mathematical error, Humana argues that R. Small's claim ran for 368 days before it was filed, and is thus barred.  Plaintiffs do not dispute Humana's calculation in their Reply to Humana's Response.

After reviewing the contested dates at issue, the Court finds that R. Small's claim is within the applicable prescriptive period of 365 days.  Humana inaccurately defines the duration of the Court's stay of litigation.  Humana is correct to state that the Court's stay of this litigation began on October 12, 2011.  (Rec. Doc. 61).  However, Humana's position that the Court's stay of this litigation ended on September 6, 2013, is flawed. [4]  Humana cites to the Court's *filing* date of its Order granting Plaintiff's Motion to Lift Stay, not to the *entry* date of said Order.  An Order does not become effective until it has been formally entered by the clerk's office, *see* Fed. R. Civ. P. 79(a) (providing for entry of orders by clerk of court); *see also* Fed. R. Civ. P. 58(c) (defining the date of entry as the effective date of judgments), and the Order granting Plaintiff's Motion to Lift Stay was not entered until September 9, 2013.  Thus, relying on Humana's original calculation that R. Small's claim ran for 368 days, adding three additional days to the

---

[4] In this Court's July 15, 2015, the Court stated that it lifted the stay on September 6, 2013.  (Rec. Doc. 251 at 16).  The Court recognizes that this reference to the filing of its Order to Lift Stay may have misled the parties, and now conclusively holds that the stay was effectively lifted on September 9, 2013.

length of the stay supports a finding that R. Small's claim ran for 365 days. This is within the applicable prescriptive period of 365 days.

### E. Plaintiffs' Standing to Request Documents under Each Patient's Health Plan

Humana objects to seven of Plaintiffs' claims on the grounds that Plaintiffs did not have standing to request documents under each patient's health plan. The alleged lack of standing stems from the patients' failure to assign their rights to the entity which requested the documents. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 251 (5th Cir. 2002) ("[A]bsent a valid assignment of benefits from the [member], [the provider/assignee] would have no derivative standing to sue the Plan under ERISA Section 502."). Following Humana's Response to Plaintiff's Response to Order to Show Cause, Plaintiffs provided additional documentation to the Court supporting their contention that each patient's rights were properly assigned. (Rec. Docs. 271-1, 273-2, 273-3). While these documents are tardy, the Court will consider Plaintiffs' supplementary exhibits in its evaluation of the seven objected-to claims.

Humana correctly notes that Plaintiffs' Response to Order to Show Cause provides some mismatched documentation. For three of these contested claims, Plaintiffs requested documents from Humana pursuant to patient assignments to "the Center." (R. Doc. 271 at 5–7). However, the exhibits attached to the Response to Order to Show Cause only substantiate patient assignments to "St. Charles." (R. Doc. 271 at 5–7). Two more of Plaintiffs' claims present the reverse problem: Plaintiffs requested documents pursuant to assignments to "St. Charles," but only provided documentation substantiating patient assignments to "the Center." (R. Doc. 271 at 6–7).

The Court finds that the additional documentation provided by Plaintiffs in their Reply to Humana's Response cures the defects in Plaintiffs' initial document production to the Court. For these six claims, as well as those which Humana did not contest in its Response to Plaintiffs' Response, the Court holds that Plaintiffs' claims are sufficiently cognizable to satisfy their summary judgment burden.

Humana contests the sufficiency of one additional claim by Plaintiffs. Humana asserts that Plaintiffs' 502(c) claim for M. Gaudet, a patient of "St. Charles," fails because Gaudet's assignment form is incomplete. Specifically, the form is missing the page with Gaudet's signature. Plaintiffs failed to correct this omission in their Reply to Humana's response, so the Court concludes that the page in question is not in Plaintiffs' control. However, the Court finds that Plaintiffs present sufficient evidence to create a fact issue regarding their 502(c) claim for M. Gaudet. While the assignment form is missing its signature page, Gaudet initialed five times elsewhere on the form, and Plaintiffs have provided this document to the Court. (Rec. Doc. 256-3 at 11). The Court finds this sufficient to create issues of fact regarding the authenticity of the document as well as Gaudet's intent to assign his ERISA benefits to "St. Charles."

### F. Proper Service on Plan Administrator

Humana next argues that twelve of Plaintiffs' ERISA section 502(c) claims fail because they do not comply with ERISA's requirement that document requests be submitted to the patient's "plan administrator." (Rec. Doc. 271 at 7–10). Humana is correct that ERISA generally requires document requests to be served on a plan administrator for purposes of section 502(c) penalties. *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (noting that ERISA imposes a requirement on the "plan administrator" to respond to document requests); *Wargotz v. NetJets, Inc.*, No. 09–4789, 2010 WL 1931247, at *3 (D. N.J. May 13,

2010) (enumerating the requirements of a section 502(c) claim, one of which is a written request to a plan administrator). However, the Court disagrees with Humana's assertion that section 502(c) does not provide for penalties in cases such as those at bar.

Humana contends that Plaintiffs cannot bring twelves of their section 502(c) claims because document requests were served on Humana's counsel, Mr. King, instead of on a valid plan administrator. Thus, this Court must first determine whether an authorized legal representative for a claim administrator may accept an ERISA-mandated document request on behalf of his client. Section 1132(c) provides that a court may use its discretion to hold an *administrator* liable for statutory penalties of up to $100 per day. 29 U.S.C. § 1132(c)(1). Unlike § 1132(a)(1)(b), which does not limit the scope of defendants, § 1132(c) specifies that only an "administrator" can be held liable. The term "administrator" is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i).

Despite the fact that this Court must strictly construe a penalty provision such as section 502(c), *see Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073 (5th Cir. 1990), the Court finds ample basis to conclude that Plaintiffs' document requests were sufficient to trigger liability. It is a well-settled principle of agency law that a principal is bound by the actions of his or her agent. *See, e.g.*, *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 92 (1990) ("Under our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent.'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)); *In re Moore*, 739 F.3d 724, 732 (5th Cir. 2014) ("An agent's acts and mental states are imputed to his principal when the agent acts on behalf of the principal."); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 272 (5th Cir. 1980) ("The liability of a principal to third parties with whom his agent deals is

predicated on the notion that the authorized acts of the agent are the acts of the principal himself."). In this case, Humana's agent, Mr. King, allegedly communicated that either Humana was refusing to accept direct service of document requests, or that he accepted responsibility for conveying document requests to Humana. The clear purpose of ERISA section 502(c) is to penalize claim administrators who refuse to timely respond to document requests by patients or their assignees. It would be a gross miscarriage of justice to allow claim administrators such as Humana to avoid compliance with section 502(b) simply by instructing their attorneys to require patients to send document requests directly to counsel.

Turning to the claims at bar, the Court finds that it is a question of fact whether Mr. King indicated that he would accept service of document requests for his client, and thus summary judgment is inappropriate. *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989). Plaintiffs' counsel, Ms. Griffith, delivered twelve separate document requests to Mr. King, each of which asserted that "Pursuant to [Ms. Griffith and Mr. King's] conversation, this will confirm that you will accept service of the above-referenced appeal on behalf of Humana Insurance Company." (Rec. Doc. 265-1 at 8). If counsel for Humana indicated that he would accept service of document requests, it defies reason for counsel for Humana to now argue that the service of documents on Humana was improper. The Court thus finds sufficient evidence exists to support a finding that counsel for Humana has waived section 502's formal requirement of service on a plan administrator. The Court finds additional support for its holding under the principles of agency law. Humana is bound by the actions of its attorney and agent, Mr. King. *See Irwin*, 498 U.S. at 92. If Mr. King indicated that he would accept personal service of document requests on behalf of Humana, Humana was effectively served for purposes of ERISA section 502(c).

Notably, counsel for Humana asserts that Mr. King sent a letter to Plaintiffs advising them that he was not an appropriate representative of Humana's document requests. (Rec. Doc. 271). Humana neglects to mention in its brief, however, that this letter was sent *three years* after Plaintiffs filed their first document request with Mr. King. (Rec. Doc. 271-1 at 4). The Court finds it disingenuous, at best, for Humana to assert that a response by counsel years after the Plaintiffs' first request for documents could possibly be considered timely.

## IV. CONCLUSION

For the foregoing reasons, Humana's Motion for Partial Summary Judgment as to Plaintiffs' 502(c) Claims (Rec. Doc. 170) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the ERISA section 502(c) claims of L. O'Brien.[5] It is **DENIED** as to the section 502(c) claims of R.P. Bryan, K. Stafford, and J. Sheehan.[6] It is further **DENIED** as to the section 502(c) claims of the thirty-seven patients for whom Plaintiffs provided supporting documentation in their Response to Order to Show Cause. (Rec. Doc. 256).

New Orleans, Louisiana this 5th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Court incorporates by reference its reasoning in its July 15, 2015, Order & Reasons for the grant of summary judgment as to L. O'Brien. Rec. Doc. 251 at 35.
[6] The Court incorporates by reference its reasoning in its July 15, 2015, Order & Reasons for the denial of summary judgment as to R.P. Bryan, K. Stafford, and J. Sheehan. Rec. Doc. 251 at 35.